530 P.2d 394

The STATE of Arizona, Appellee,

v.

Nicholas Stephen VITALE, Appellant.

No. 2 CA–CR 394.

Court of Appeals of Arizona,
Division 2.

Jan. 7, 1975.

Rehearing Denied Feb. 7, 1975.

**38**

Bruce E. Babbitt, Atty. Gen., N. Warner Lee, Former Atty. Gen. by Shirley H. Frondorf, Asst. Atty. Gen., Phoenix, for appellee.

Soble & Cole, P. C. by Joseph H. Soble, Tucson, for appellant.

OPINION

KRUCKER, Judge.

Appellant was convicted of attempting to receive stolen property pursuant to A.R.S. §§ 13–108, 13–110, 13–621 and 13–1645, as amended. He was initially arrested on a charge of receiving stolen property, but this charge was subsequently dismissed. Following a plea of not guilty, appellant made motions at a February 20, 1974 hearing to suppress evidence, to establish entrapment as a matter of law and to dismiss the charge of attempt based on the allegation that the substantive crime was impossible. The motions were denied and appellant was thereafter convicted and sentenced to six months' probation and a $300 fine was imposed.

Appellant seeks reversal of his conviction on the following grounds:

1. That the evidence used in proving his guilt was illegally obtained and therefore should not have been admissible;

2. That he was entrapped as a matter of law;

3. That if the substantive offense was legally impossible, then an attempt to do it is not an offense;

4. That he was denied due process by the admission of the testimony concerning his conversation with the police informant after the State had lost tape recordings of the conversation.

The facts are that on May 1, 1973, a police informant, Steven Fristoe, was in the custody of the Tucson Police Department on charges of burglary, possession of forged documents, possession of marijuana, forgery and receiving stolen property. Fristoe, in a recorded interview on May 1, 1973, stated he had sold stolen property to appellant at his pawn shop and informed appellant the property was stolen.

Thereafter, the police devised a plan by which they might catch appellant receiving stolen property. A television set, recovered in an unrelated burglary several months earlier, was used. The informant, in exchange for a promise to drop several charges, agreed to try to sell the television set to appellant. The informant was fitted with a listening device so that the planned transaction with appellant could be recorded and listened to by the police.

Additionally, the police telephoned Justice of the Peace Eleanor Schorr to obtain a search warrant. The transcription of the conversation shows that the judge was informed that the informant was to help set up the sale of a stolen television set; that the informant had stated that he had previously taken and sold stolen goods to appellant; that the informant was known to the police officer and had been used as an informant on one prior occasion and had proven to be reliable; that the television set to be used was in the possession of the police and was related to a burglary unconnected with the informant.[1] The following colloquy took place between Judge Schorr and Officer Walsh:

"JUDGE SCHORR: Now it's your intention to go in and search this place, if there . . . the pawnshop if there is no evidence that comes over your tap, or your speaking equipment?

WALSH: That's correct, ma'am. It's contingent on whether or not the subject in the pawnshop, Vitale, agrees to purchase the stolen television set."

After obtaining the search warrant, Detectives Walsh and Hill proceeded with Fristoe to appellant's pawn shop in an unmarked car, accompanied by two other detectives in a second car. Both cars were equipped with tape recorders and receivers for the device placed on Fristoe.

Fristoe entered the pawn shop and attempted to sell the television set to appellant, explaining that it was stolen. Appellant refused to purchase it because Fristoe did not have identification. Fristoe returned to Walsh's police car. An undercover agent was called in who accompanied Fristoe to appellant's pawn shop. The undercover agent supplied false identification and signed a false name to the pawn slip. Appellant then refused to accept the set for $120.00. The informer bargained and finally lowered his price to $90.00. Appellant then accepted the television set and the undercover agent signed his name to a pawn slip as appellant stated that the set was stolen and if there was any problem it would be their problem.

Fristoe and the undercover agent then left the pawn shop and delivered the money to Detective Walsh. Walsh, accompanied by Detective Hay, then executed the search warrant by entering the pawn shop through the front door, approaching appellant and indicating they were seeking the television set. Appellant indicated it was behind the counter and it was then seized.

Walsh took the tape recording of the conversation made in his car to the county attorney's office and placed it in a case file. He received the tape recording of the conversation made by the backup detectives' car, listened to it and found it was inaudible in parts. Walsh released the inaudible tape, which was subsequently reused, thereby erasing the recording of the conversations.

1. Appellant asserts in his statement of facts and arguments that Police Officer Walsh made untrue statements to Judge Schorr. Specifically, appellant argues that it was incorrectly stated that (1) Fristoe had sold stolen goods to the appellant within the past three weeks; (2) Fristoe had informed appellant that the television set was stolen when in fact no contact had yet been made with him regarding the television; (3) Fristoe was a reliable informant, although he was aware of several discrepancies in the statements made by Fristoe. The transcript of the hearing held on February 20, 1974, shows that the deputy county attorney acknowledged that the informant was not reliable. As to the other points raised by appellant, there is some ambiguity as to their validity. For reasons set forth in our opinion, we find that the search warrant was invalid, but we need not reach the issue of invalidity based upon these particular facts.

It was later discovered that the remaining tape recording was missing from the file at the county attorney's office and could not be located despite a thorough search. At trial the police officers and informant testified that Vitale was told and expressed an awareness that the television set was stolen. Appellant denied knowing the set was stolen.

## WAS THE TELEVISION SET PROPERTY ADMITTED INTO EVIDENCE?

■ Appellant contends that the search warrant obtained by the police was prospective in nature and therefore invalid; that the affidavit submitted to the magistrate issuing the search warrant contained material misrepresentations and failed to establish the reliability of the informant; and, that the police could not seize the television set pursuant to a valid arrest.

We agree with appellant's contention that the search warrant issued in the instant case was invalid because there was no probable cause to believe a crime had been committed. Indeed, the transcript of the conversation between Officer Walsh and Justice of the Peace Schorr clearly shows there was no evidence of a crime having been committed at the time the warrant was issued. The informant had not yet approached appellant regarding the television set at the time the telephone search warrant was issued; also, there had not been any recent dealings between the informant and appellant.

A.R.S. § 13–1442, as amended, reads:

"A search warrant may be issued upon any of the following grounds:

1. When the property to be seized was stolen or embezzled.

2. When the property or things to be seized were used as a means of committing a public offense.

3. When the property or things to be seized are in the possession of a person having the intent to use them as a means of committing a public offense or in possession of another to whom he may have delivered it for the purpose of concealing it or preventing it being discovered.

4. When property or things to be seized consist of any item or constitute any evidence which tends to show that a particular public offense has been committed, or tends to show that a particular person has committed the public offense.

5. When the property is to be searched and inspected by an appropriate official in the interest of the public health, safety or welfare as part of an inspection program authorized by law. As amended Laws 1970, Ch. 59, § 1; Laws 1972, Ch. 61, § 3."

■ The test as to the sufficiency of an affidavit in support of a search warrant is not whether items found in the search support the affidavit but whether at the time the affidavit was presented it contained information upon which probable cause could be found to issue a warrant. State v. Reynolds, 11 Ariz.App. 532, 466 P.2d 405 (1970). A.R.S. § 13–1442, as amended, clearly refers to seizing property where the criminal offense has already occurred. But, the requisite occurrence of a crime was lacking here.

Appellee places great emphasis on State v. Cox, 110 Ariz. 603, 522 P.2d 29 (1974), to support the procedure followed here. The factual distinctions between the instant case and Cox are clearly apparent. In Cox, the affidavit met the probable cause test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The affidavit in Cox enunciates the circumstances upon which the police premised their belief that the subject car was carrying marijuana. An informant's tip was clearly stated indicating that marijuana had been recently seen in the car. The facts establishing the informant's reliability and corroborating facts known by other agents were set forth. In brief, there was

probable cause to believe that a crime was being or had been committed.

Furthermore, in *Cox* the comment is made:

"As long as the magistrate is fully and fairly apprised of the facts, it is reasonable to issue a warrant to be served at some time not unreasonably distant for a crime, as here, that is in progress or it is reasonable to assume will be committed in the near future." 522 P.2d at 34.

In the instant case, no crime was in progress and it was a matter of pure speculation whether one would be committed in the future. The course of events strongly suggests that the duty to determine probable cause was improperly shifted from the magistrate to the police. Cf., Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Appellant's second major attack upon the admission of the television set into evidence is premised upon the assertion that the seizure was outside the permissible limits of a search incident to a valid arrest. With this argument, however, we disagree.

On direct examination Officer Walsh described the arrest and seizure as follows:

\* \* \* \* \* \*

"Q. Okay. Can you also tell us what happened, did you actually execute the search warrant?

A. Yes, sir, I did.

Q. How did you proceed to do that?

A. Stationed Detectives Hay and Biggs at the back of the pawnshop and Detective Hill and myself went through the front door with the search warrant. Mr. Vitale was in there. I approached him, identified myself, and told him I had a search warrant for the premises to search for the specific item I named, the tv set. He said, 'It's right here.' I looked over the counter. It was there. My search stopped.

Q. Immediately when you entered the pawnshop did you see anyone else in there besides Nicholas Vitale?

A. Yes.

Q. Who was that?

A. There was a little girl in the back that was doing the books.

Q. That was all?

A. Yes.

Q. Did you take that tv into your custody?

A. Yes, sir, I did."

This description of the course of events is not challenged by appellant. The twofold attack appellant makes is that (1) because the police anticipated finding the television set they were required to have a valid search warrant and (2) the search and seizure does not fall within the ambit of a search incident to an arrest. Appellant cites the following portion of Coolidge v. New Hampshire, supra, in support of the first point:

"The initial intrusion may, of course, be legitimated, not by warrant but by one of the exceptions to the warrant requirement, such as hot pursuit or search incident to lawful arrest. But to extend the scope of such an intrusion to the seizure of objects—not contraband nor stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." 403 U.S. at 471, 91 S.Ct. at 2040.

We find upon examining *Coolidge* that the relevant point being made is in relation to the seizure of evidence expected to be in plain view. However, the testimony in the instant case fails to disclose that the police expected the television set to be in plain view. Indeed the fact that it was behind a counter tends to support a contrary conclusion.

The fact that the television set was discovered as a result of appellant's voluntary disclosure is a significant fact which effectively rebuts appellant's second point. He argues in reliance upon Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.

Ed.2d 685 (1969), that a search incident to an arrest is restricted to the person and the surrounding area accessible to him. With this assertion we agree; however, here the police never instituted a search because upon being served with the search warrant appellant voluntarily disclosed the location of the set.

■ Therefore, it appears that while making a valid arrest, appellant volunteered information regarding the location of the set. He was not obligated to do so because execution of the search warrant only carried with it a colorable right to search and not a demand to produce. The police, having been informed of the location of the television set without having to undertake a search, could then make a legitimate seizure.

## WAS APPELLANT ENTRAPPED AS A MATTER OF LAW?

Appellant sought to deny commission of the crime by asserting that he did know the property was stolen and at the same time he urged the defense of entrapment. The trial court refused to allow him to plead in the alternative and he claims that this was reversible error. This contention is without merit.

In State v. McKinney, 108 Ariz. 436, 501 P.2d 378 (1972), the following comment is made regarding the defense of entrapment:

"A defendant who wishes to avail himself of a defense of entrapment must admit the substantial elements of the crime and one who denies knowledge of the crime may not raise the defense of entrapment. United States v. Mehciz, 437 F.2d 145 (9th Cir. 1971); Munroe v. United States, 424 F.2d 243 (10th Cir. 1970). In order to have a valid claim of entrapment, 'there has to exist activity by the State in the nature of an inducement to commit a crime which the accused would not have otherwise committed, although providing the mere opportunity to commit the offense is not sufficient. State v. Duplain, 102 Ariz. 100, 425 P.2d 570. The criminal conduct must be the product of the creative activity of law enforcement officials, State v. Rabon, 100 Ariz. 344, 414 P.2d 726.' State v. Boccelli, 105 Ariz. 495, 497, 467 P.2d 740, 742 (1970). See also State v. Martin, 106 Ariz. 227, 474 P.2d 818 (1970).

A.R.S. § 13–108 defines attempt as follows:

"An attempt to commit a crime is the performance of an act immediately and directly tending to the commission of the crime with the intent to commit such crime, the consummation of which fails on account of some intervening cause."

■ The elements of criminal attempt have been consistently stated to be an intent to commit a crime coupled with some act towards commission of the crime. State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970); State v. Westbrook, 79 Ariz. 116, 285 P.2d 161 (1954).

■ Appellant argues that pleading not guilty was not inconsistent with his defense of entrapment. Such an assertion is clearly incorrect because, as previously pointed out, to plead entrapment one must admit the elements of the crime, intent and an overt act in furtherance thereof. However, appellant premises his plea of innocence upon a lack of knowledge that the goods were stolen, which seemingly goes directly to the issue of intent.

In State v. McKinney, supra, the Arizona Supreme Court chose to rely upon the Ninth and Tenth Circuit Court of Appeals' decisions disallowing the simultaneous assertion of entrapment and innocence. The rationale was stated in Ortega v. United States, 348 F.2d 874, at 876 (9th Cir. 1965):

"As we said in Ramirez v. United States, 9 Cir., 294 F.2d 277, 283 (1961): '[A]bsent the commission of a crime, there can be no entrapment.' [Citations omitted]

Thus, to utilize the entrapment defense, an accused must admit he committed acts which constitute a crime, but as-

sert that those acts he committed were not contemplated by him until he was improperly induced to commit them by a government agent."

Appellant recognizes the holding in *Ortega* but contends it is not inconsistent to claim he was entrapped insofar as his purchase of the television set from the police informer and still deny knowledge that the set was stolen. He argues he was not saying, "I didn't do it." Rather, he was denying he knew it was stolen.

This argument is illogical because, again, denial of knowledge that the article was stolen goes to the issue of intent. By denying knowledge he thereby denies intent and in effect argues he is innocent. It would appear that appellant is semantically going in circles.

Nor do we think the facts constitute entrapment as a matter of law. Appellant relies upon United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), to support his contention that this is an example of the police creating a criminal design and planting it in his mind.[2]

In *Russell* the defendant was convicted of unlawfully manufacturing and selling methamphetamine. His sole defense was that he was entrapped into committing the offense by a government undercover agent who supplied phenyl-2-propane, an essential ingredient in the manufacture of methamphetamine. It was held that the defendant's lack of predisposition to commit the crime was the principal element of entrapment and consequently the defendant's concession that the jury could have found him predisposed to commit the offense was fatal to his claim of entrapment. The decision emphasizes the point that the key to the defense of entrapment is whether the defendant was induced to commit the requisite elements of the crime.

 There is a significant distinction between inducing action and merely pro-

viding an opportunity. Merely providing the opportunity to commit a criminal act does not *a fortiori* implant in the accused's mind the requisite element of intent. State v. Petralia, 110 Ariz. 530, 521 P.2d 617 (1974). The facts here show that the police provided only an opportunity for appellant to attempt to receive stolen property. The requisite element of intent was established by the informant's testimony that on previous occasions appellant had expressed a willingness to receive stolen property and that on this particular occasion he was told and evidenced an awareness that this television set was stolen. Clearly the intent and subsequent overt acts were not implanted in the mind of appellant by the police.

### VIABILITY OF THE DEFENSE OF LEGAL IMPOSSIBILITY

 Appellant asserts that conviction for attempt to receive stolen property was error when the substantive crime was legally impossible. The substantive crime of receiving stolen property, A.R.S. § 13–621, as amended, cannot be committed unless the property is actually stolen. State v. Hull, 60 Ariz. 124, 132 P.2d 436 (1942); State v. Tellez, 6 Ariz.App. 251, 431 P.2d 691 (1967). Although the property in question had been stolen, it was and had been in the possession of the police for approximately six months before being used in this case. Appellant maintains that the extended police custody technically removed the television set from a classification of "stolen." Thus, he concludes it was legally impossible for the substantive crime of receiving stolen property to be committed and therefore an attempt to commit the crime is a legal impossibility.

In State v. Mandel, 78 Ariz. 226, 278 P. 2d 413 (1954), it was held that factual impossibility would not bar conviction for criminal attempt. Appellant asks, however, that we distinguish between factual and legal impossibility citing People v. Rollino,

---

2. It should be noted that the defense of entrapment does not raise an issue of constitu-

tional dimension. United States v. Russell, supra, at 433, 93 S.Ct. 1637.

37 Misc.2d 14, 233 N.Y.S.2d 580 (1962). *See also*, Booth v. State, 398 P.2d 863 (Okl.Cr.1964); Waters v. State, 2 Md.App. 216, 234 A.2d 147 (1967); Annot., 37 A.L.R.3d 375, § 3 (1971).

The soundness of the New York decisions in this area has been the subject of repeated criticism. In *Mandel*, California decisions were relied upon and review of that state's decisions indicates that appellant is subject to prosecution. Faustina v. Superior Court of Los Angeles County, 174 Cal.App.2d 830, 345 P.2d 543 (1959); People v. Rojas, 55 Cal.2d 252, 10 Cal.Rptr. 465, 358 P.2d 921 (1961); *see also*, Annot., 37 A.L.R.3d 375, § 23 (1971).

■ We therefore hold that legal impossibility is not a bar to prosecution for an attempt to receive stolen property. The rationale for this conclusion is that but for factors unknown to appellant, he committed acts which would have been sufficient to complete the substantive crime and exhibited the requisite intent.[3]

■ Appellant briefly asserts that no intent was shown to receive stolen property apart from the overt act. The crime of attempt requires proof of an overt act and specific intent, which must be proven by evidence other than the overt act itself. Elfbrandt v. Russell, 97 Ariz. 140, 397 P.2d 944 (1964).

Appellant's argument ignores several facts. The testimony shows that the informant indicated to appellant, prior to his actually taking possession of the television set, that it was indeed stolen. Additionally, the informant testified to having had previous conversations with appellant in which appellant indicated he would accept stolen property. Furthermore, the informant testified that when he returned with the undercover agent to sign the pawn receipt, appellant stated:

"You know this is hot. If the police come down on it, it's going to go on you and not on me."

Thus, evidence of intent, separate and apart from the overt act of receiving, was clearly established.

## ADMISSIBILITY OF APPELLANT'S INCULPATING CONVERSATION

■ Finally, appellant argues that he was denied due process by the admission of testimony concerning his conversation with the police informant and undercover agent. He asserts that by destroying one of the tapes of this conversation and losing the second tape, the prosecution failed to comply with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

A review of the record indicates that appellant failed to property preserve this issue below and is therefore precluded from raising it on appeal.

Rule 16.1(c), Rules of Criminal Procedure, 17 A.R.S., reads:

"Any motion, defense, objection, or request not timely raised under Rule 16.1(b) shall be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it."

The Comment to Rule 16.1(c) indicates that any motion not made in compliance with the rule is thereafter precluded. The record shows that appellant indicated on his omnibus hearing form an objection to the failure of the prosecution to provide the tapes of the conversations. The transcript and minute entry of the proceedings for January 21, 1974, indicate that the objection was overruled for the reason that the State could not comply. The lower court specifically did not determine by its ruling the admissibility of any evidence related to the tapes nor whether the matter raised in the objection constituted grounds for a motion to quash or suppress. Subsequently, appellant made motions to dismiss and suppress but never raised in these motions the alleged suppression of the tapes and testimony related thereto. His failure

---

3. For an exhaustive discussion of this area, *see*, F. Kadish and M. Halton, Criminal Law and its Process, 403 (2d Ed. 1969).

to specifically object to the admissibility of the inculpating conversation as related by the prosecution's witnesses at either the omnibus hearing or at trial forecloses appellate consideration.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.