569 P.2d 220

**The STATE of Arizona, Appellee,**

v.

**Mary SAVCHICK, Appellant.**

No. 3885.

Supreme Court of Arizona,
In Banc.

Sept. 7, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edmund T. Allen, III, Deputy Public Defender, Phoenix, for appellant.

Mary R. Savchick, in pro. per.

CAMERON, Chief Justice.

On 26 February 1976, Mary Savchick was convicted by a jury of six counts of welfare fraud. A.R.S. § 46–215. The six counts referred to the six dates (15 July 1974; 28 August 1974; 9 October 1974; 29 October 1974; 29 November 1974; and 24 December 1974) on which the defendant was issued food stamp purchase authorizations on the basis of false representations made by her to the Department of Economic Security.

The trial court placed the defendant on probation for one year and ordered the defendant to make restitution in the sum of $180.00, payable $15.00 a month. The defendant was also ordered to participate in a Work Order Program but this condition was later deleted by the court.

This court has jurisdiction pursuant to 47(e)(5), Supreme Court Rules, 17A A.R.S.

The defendant's attorney, pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), filed a brief in which the sole issue raised was whether there was sufficient evidence to support a conviction on Count One, which charged the defendant with attempting to commit welfare fraud on 15 July 1974. The defendant, in addition, filed a supplemental brief in propria persona which challenged the sufficiency of the evidence on all six counts.

The facts necessary for a determination of this matter are as follows. In June 1974, the defendant, an employee of Honeywell Corporation, applied for food stamps at DES and was determined to be ineligible. In order to be eligible for food stamps, applicant's gross income less deductible expenses must be below a certain amount. Shelter costs, in the form of rental or mortgage payments, are considered a deductible expense. If the applicant qualifies for stamps, the net adjusted income in conjunction with the number of persons in the household determines the purchase price for a month's allotment of stamps. Apparently, the defendant did not qualify for stamps because she failed to make a mortgage payment for that month and hence was not entitled to a shelter cost deduction sufficient to reduce the defendant's net income below the set amount.

On 26 June, the defendant reapplied for food stamps for the month of July, this

time requesting credit for two or more mortgage payments. The eligibility worker, Mr. Carrillo, asked for verification and the defendant mailed the following letter the next day to the Food Stamp Section of DES:

"June 27, 1974

Dept. of Economic Security
Food Stamp Office
2225 N. 16 St.
Phoenix, Az. 85006
Attn. Mr. Carrillo
Gentlemen:

This is to verify that Mrs. Mary Savchick has deposited with us the sum of $400 to be applied toward her mortgage payments. This money will be forwarded by us directly to First Federal Savings and Loan Assn. and is not accessible to Mrs. Savchick.

Very truly yours,
/s/ James A. Simpson
[Honeywell] Credit Union"

On the basis of this letter, the defendant was credited with a $400 shelter cost deduction for July and DES issued to her on 15 July 1974 a food stamp purchase authorization qualifying her for $82 worth of food stamps for a zero purchase price.

The letter was, in fact, a false statement. The defendant testified at trial that she prepared the letter for the signature of Mr. Simpson who was an officer at the Honeywell Credit Union. She testified that she told him she needed the letter to qualify for food stamps. She admitted that Mr. Simpson told her at the time he signed the letter that the statements in the letter were untrue. The defendant also admitted that she knew the $400 she had on deposit was at all times accessible to her; and that, in fact, she later withdrew it. Mr. Simpson testified that he signed the letter; and that he knew at the time there was no agreement made between Honeywell Credit Union and First Federal for a transfer of funds from the defendant's account for mortgage payments.

On 29 July 1974, defendant submitted another letter from the Honeywell Credit Union stating that defendant had deposited the sum of $384 to be applied to her mortgage payment and that the amount was to be "forwarded by us directly to First Federal Savings and Loan Association and is not accessible to Mrs. Savchick." Thereafter, defendant merely changed the date on the letter and submitted it again. The letter was redated for 28 August, 27 September, 19 October, and 15 November. The defendant testified as follows:

"Q I will show you what has been marked State's Exhibit and admitted in evidence as Number 7. Do you recognize that?

"A Yes.

"Q What is that?

"A This is the second letter from the Credit Union addressed to whom it may concern and signed by Jim Simpson.

"Q Is that the original letter or some type of copy?

"A This is a Xerox copy.

"Q Who made that copy?

"A I did.

"Q How did you make that copy?

"A On a Xerox machine.

"Q How was the document prepared?

"A Initially it was typed up. Is that what you mean?

"Q Did you have to change anything on the original?

"A Yes, I updated it each month.

        *    *    *    *    *    *

"Q Did you make a deposit at the Credit Union of $384 during August?

"A Yes, the day that original letter was typed up.

"Q The original. I'm talking about in August, did you make that $384 deposit?

"A No."

As to other expense statements submitted by the defendant, she testified:

"Q BY MR. WILKES: I would like to show you what is marked Exhibit Number 17. I believe you testified earlier on direct examination that that was a bill which you made some alterations in; isn't that correct?

"A That is correct.

"Q I believe you testified you didn't make any other visit than the first visit which appears at the top; is that correct?

"A Yes.

"Q I believe you testified also that you submitted that to the food stamp worker as verification for your medical expenses; isn't that correct?

"A Yes.

"Q Isn't it also correct that at the time you submitted that to the food stamp worker you knew that document contained information that was not true?

"A Yes.

"Q I will show you what has been marked State's Exhibit Number 16 and ask you to look at that, please. I believe you testified earlier that that is one of the documents that you also submitted to the food stamp worker at the time for your application; isn't that correct?

"A Yes.

"Q And I believe you also testified at that time that there were certain items on there which you had changed; isn't that correct?

"A That I added.

"Q That you had added?

"A Yes.

"Q And the items that you added did not reflect the true statement of your account with the doctors at that time?

"A Yes.

"Q And isn't it a fact that you knew when you submitted that to the food stamp worker that you were submitting information that was not true and correct?

"A Yes."

■ We have no difficulty in affirming the defendant's conviction of the crime of welfare fraud as to the five counts for which she was found guilty and adjudged guilty by the court. The testimony of the defendant was more than enough to convict her.

Defendant's attorney, however, raises the question of the conviction of attempted welfare fraud as charged in Count One based upon the application for food stamps on 15 July 1974. The reason for this challenge is that it is contended that the defendant was, in fact, eligible for food stamps at the time of that application and that therefore there could be no attempt to fraudulently obtain them. We do not agree.

Admittedly, the defendant had, in fact, paid in July arrearages totaling $2,489 to First Federal Savings and Loan Association for mortgage payments on her house that had accrued from August 1973 to June 1974. The defendant also paid to First Federal her regular house payment of $192.00 for the month of July.

After investigation into the defendant's eligibility for food stamps had begun, DES recalculated the defendant's entitlement for the months in question including the month of July. At trial, a DES supervisor testified that the defendant was entitled to a $362 shelter cost deduction as credit for the mortgage payments the defendant had made on 12 July 1974, and that therefore there had been no "overpayment" of food stamps to the defendant in that month.

At the conclusion of the trial, the defendant made a motion for a directed verdict of acquittal pursuant to Rule 20, Rules of Criminal Procedure (1973), on Count One, on the basis that the defendant did not receive more welfare assistance than that to which she was entitled for July. The State argued that the defendant was nevertheless guilty of attempted welfare fraud under A.R.S. § 46–215 by submitting false documentation to DES. The trial court denied defendant's motion and the defendant was convicted on Count One of attempted welfare fraud, as well as five counts of actual fraud.

A.R.S. § 46–215 provides:

" § 46–215. Fraudulent acts; penalty

"A. A person is guilty of a misdemeanor who knowingly obtains, or attempts to

obtain, or aids, or abets any person to obtain by means of a false statement or representation, or by impersonation, or by other fraudulent device:

1. Assistance or service to which he is not entitled.

2. Assistance or service greater than that to which he is entitled."

■ A.R.S. § 46–215 imposes criminal liability for attempts. An attempt to commit a crime is defined as "the performance of an act immediately and directly tending to the commission of the crime with the intent to commit such crime, the consummation of which fails on account of some intervening cause." A.R.S. § 13–108. To sustain a conviction for an attempt there must be proof of an overt act toward the commission of the crime and of specific intent on the defendant's part to commit the substantive crime. *Elfbrandt v. Russell,* 97 Ariz. 140, 397 P.2d 944 (1964); *State v. Vitale,* 23 Ariz.App. 37, 530 P.2d 394 (1975).

■ The defendant's specific intent as well as her overt act was well established by her testimony that she drafted and submitted in her application for food stamps a false document as verification for a payment that was never made.

■ Although it was legally impossible for the defendant to have committed the substantive crime of welfare fraud, because DES later determined that she was entitled to the food stamp assistance she received on 15 July, this is not a bar to a conviction for criminal attempt. *State v. Vitale,* supra.

■ In her brief the defendant also asserts as reversible error an exchange which took place during a trial recess between the assistant attorney general prosecuting the case and a bailiff in the presence of a juror. The assistant attorney general voluntarily reported the incident to the trial judge:

"MR. WILKES: Basically, it was this. I got on the elevator, and one of the bailiffs, from Court Commissioner Judge Novak, was on there, with whom I am acquainted from past experience. He asked me what I was doing here, because he knew I was at the Attorney General's Office, and I said I was in the middle of a trial. The next question was, 'What kind of trial?' I said it was a welfare trial.' I believe, if I recall, he said, 'In a trial like this you just determine whether you get money back.' I said, 'No, there is also a criminal penalty up to one year.'

Then as I recall the conversation went on to some other non-related issues having nothing "to do with this case, and subsequent to talking to him, I believe, even after he got off, I noticed one of the jurors had been in the back of the elevator. The gentleman has been sitting in the back row. I have no way of knowing whether or not he heard our conversation or whether he was aware of it. I felt I should bring it to the Court's attention."

The trial court presented defendant and her counsel with several alternatives, one of which was to disregard the incident. Defendant conferred with her counsel outside of chambers. They returned and defense counsel reported as follows:

"MR. SHUTTS: For the record, after conferring with my client, we have agreed to treat this as an important incident which we would just as well let lie."

The defendant thus waived the issue at the trial level and cannot now successfully raise it on appeal. *State v. Tostado,* 111 Ariz. 98, 523 P.2d 795 (1974).

Judgments of conviction on all six counts are affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.