## No. 27828

### The People of the State of Colorado v. Leroy George Anaya

(572 P.2d 153)

Decided December 12, 1977.

---

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Nancy E. Rice, Deputy, Paula K. Miller, Deputy, for plaintiff-appellee.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, J. Stephen Phillips, Chief, Appellate Section, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Appellant pled guilty to two habitual criminal counts and to one count of possession of burglary tools and was sentenced to a term of twelve to fourteen years in the Colorado State Penitentiary. As a result of a plea bargain, a guilty plea was entered, and the district attorney dismissed one count of conspiracy to commit first-degree burglary and theft, one count of first-degree burglary of a pharmacy, and one count of felony theft.

While serving his sentence, the appellant filed a motion to set aside and vacate the judgment, pursuant to Crim. P. 35(b)(2), alleging that the habitual criminal statute, section 16-13-101, C.R.S. 1973, was unconstitutional as applied to him. The appellant's motion was denied, and this appeal was perfected.

The arguments advanced by the appellant were rejected in *People v. Larson,* 194 Colo. 338, 572 P.2d 815. Further discussion is not warranted.

Accordingly, the judgment is affirmed.

MR. JUSTICE CARRIGAN dissents.

MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent.

The defendant was convicted on his plea of guilty to possessing a burglary tool, a "class 5" felony normally punishable by a sentence of one to five years. (Sections 18-1-105 and 18-4-205, C.R.S. 1973.[1] The district

---

[1]Prior to an amendment in 1971, one found in possession of burglary tools was "deemed a vagrant" punishable by imprisonment for not exceeding two years. C.R.S. 1963, 40-3-7.

attorney, alleging prior convictions for second-degree burglary in 1967 and first-degree criminal trespass in 1973, elected to invoke the much more severe penalties of the "little" habitual criminal statute. Therefore, instead of the 1 to 5-year sentence statutorily prescribed for the underlying or "triggering" crime for which he was convicted, he was sentenced to a term of 12 to 14 years upon conviction as a habitual criminal.

The majority opinion has rejected out-of-hand the defendant's contention that the "little" habitual criminal act is unconstitutional *as applied* to him. I respectfully disagree.

The effect of this "little" habitual criminal act is to *require* that a sentencing judge punish one who has two prior felony convictions by sentencing him to serve *not less than the maximum* term for which he could have been sentenced but for the district attorney's having elected to charge him as a habitual criminal, and up to three times that maximum term. On the facts in this case, for example, for a crime which normally carries a one-to-five-year sentence range, the trial judge was required to sentence at least five years. In fact the defendant was sentenced to serve twelve to fourteen years. This for possessing burglary tools, for which, but for the district attorney's having decided to treat him as a "habitual criminal" his sentence could have been as little as one year and not over five years.

The statute in question provides:

"*Every person* convicted in this state of any felony who has been twice previously convicted upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony, *shall be adjudged an habitual criminal and shall be punished* by confinement in the state penitentiary for a *term* of *not less than the longest term, nor more than three times the longest term prescribed upon a first conviction.*" Section 16-13-101, C.R.S. 1973. (Emphasis added.)

It is obvious from the statute's language that the General Assembly did not intend that district attorneys be empowered to pick and choose on an arbitrary basis which defendants would be subjected to the triple penalties and which would be spared. The legislature's use of the words "Every person" and the verb "shall" clearly indicate an intention that the act be mandatory. *Industrial Commission v. Plains Utility Co.*, 127 Colo. 506, 259 P.2d 282 (1953); *Swift v. Smith*, 119 Colo. 126, 201 P.2d 609 (1948); *Anlauf Lumber Co. v. West-Fir Studs, Inc.*, 35 Colo. App. 119, 531 P.2d 980 (1974); *Sperry-Rand Corp. v. County Commissioners*, 31 Colo. App. 444, 503 P.2d 356 (1972).

Yet the record shows, and it is undisputed, that the habitual criminal act has been *applied* by prosecutors on an arbitrary, capricious and highly selective basis.

A monograph prepared by the Colorado State Penitentiary Bureau of Classification and Records, and included in the record here, clearly demonstrates the arbitrary and uneven application of this statute. That study shows that from August, 1953 to August, 1973, out of 3,211 persons eligible for imprisonment as habitual criminals, only 33 were selected by district attorneys for that more severe punishment. The monograph indicates that although almost 23% of those sent to the penitentiary during that time had the necessary prior convictions to be "habitual" criminals according to the statutory standard, only about 1% met whatever standards, if any, were being employed by district attorneys in deciding whether to apply the habitual criminal punishment to them.

The record reflects that the same trend continued into 1974. Of 559 new admissions received by the penitentiary from the courts from September 1, 1973, through August 31, 1974, 332 or 59% had records qualifying them for prosecution as habitual criminals. Yet only four of those 332 had actually been selected by district attorneys for punishment as habitual criminals.

It appears obvious from the statistical pattern of prosecutions under the habitual criminal act that in actual application the act is being interpreted as granting district attorneys unbridled discretion to invoke or not invoke its provisions without the slightest regard for the apparently mandatory language of the statute which seems to require that it apply in every case where the defendant's record justifies it.

The result has been to take from the legislature and the courts, and place in district attorneys, the actual discretion to determine the severity of individual sentences in a substantial number of felony cases. The effect may be to empower a prosecutor to force upon a trial judge the imposition of a sentence so grossly disproportionate to the severity of the offense involved as to shock the conscience of the court. Such a sentence may be so excessive as to constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article II, section 20 of the Colorado Constitution. For a careful, thorough discussion supporting this position, *see Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. den.*, 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974) (holding West Virginia recidivist statute unconstitutional as applied to require disproportionately severe sentence).

The practical effect of the habitual criminal act *as applied* is to create a *status* of *being* a particular type of person. However, in *application* the determination of which persons are to be punished for having that status seems totally unrelated to the statutory standards defining the status. During the twenty-one year period studied, only about one percent of

those legislatively defined as having the status of habitual criminals were actually punished as having that status. No rational basis appears, and none has been suggested, to support the selection of that particular one percent for punishment as habitual criminals. Punishment for having a particular status — rather than for having committed a particular crime — is highly questionable even when fairly administered. *Cf. Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (misdemeanor of "being addicted to the use of narcotics," held cruel and unusual punishment). But when irrationally and arbitrarily applied, punishment for having the status of an habitual offender violates due process.

Even from the most pragmatic point of view, the net effect of the habitual criminal act as applied in this state is bound to be destructive to the criminal justice system. Its purposes seem to have been (1) to provide — through longer sentences — more effective deterrents to those contemplating professional careers in crime, and (2) to isolate from society on a long-term basis those who by repeated criminal conduct, have demonstrated their recidivism. As Mr. Justice White observed, however, in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) an especially severe penalty may be counterproductive when only rarely and erratically applied. He wrote:

"But when imposition of the penalty reaches a certain degree of infrequency, it would be very doubtful that any existing general need for retribution would be measurably satisfied. Nor could it be said with confidence that society's need for specific deterrence justifies death for so few when for so many in like circumstances life imprisonment or shorter prison terms are judged sufficient, or that community values are measurably reinforced by authorizing a penalty so rarely invoked.

"Most important, a major goal of the criminal law — to deter others by punishing the convicted criminal — would not be substantially served where the penalty is so seldom invoked that it ceases to be the credible threat essential to influence the conduct of others. For present purposes I accept the morality and utility of punishing one person to influence another. . . . But common sense and experience tell us that seldom-enforced laws become ineffective measures for controlling human conduct. . . ." 408 U.S. at 312-313, 92 S.Ct. at 2763, 33 L.Ed.2d at 391.

In this day when disparity of sentences is frequently cited as a major problem for those charged with administering correctional institutions, the random and capricious application of the habitual criminal statute is surely counterproductive.

Traditionally district attorneys have been given broad discretion whether or not to prosecute when the guilt of an accused person is not certain. Normally, however, once guilt has been established, the choice of what punishment to impose, within statutory limits, is for the court. But here, where the only proof necessary to establish the crime of *being a*

*habitual criminal* is readily available in court records, the real discretion involved is not whether to prosecute. Rather, it is whether to single out a particular defendant and inflict on him or her a far greater penalty than society usually exacts from others found guilty of the same crime.

Nor has the General Assembly provided any standards to guide district attorneys in the exercise of this awesome power. As noted above, the plain language of the act mandates its application in all cases, and thus the legislature no doubt saw no need for standards. Since there are twenty-two district attorneys, there are probably at least twenty-two different actual standards for determining which defendants shall receive the enhanced punishment. Thus it may be that one district attorney may apply the increased punishment in cases involving violence, another in sex cases, another in property crimes. Some district attorneys apparently do not invoke the habitual criminal act at all.

If we are to preserve in fact as well as form the ideal that ours is a government of laws, not men, we cannot tolerate procedures which allow one person, unrestrained by any standards set by statutes or rules of general application, to pick and choose at whim who shall receive light punishment and who shall receive heavy punishment for like offenses. In essence, the power exercised by a district attorney in deciding whether or not to file an habitual criminal charge in a particular case is *sentencing* power. Normally sentencing is a *judicial* function subjected to carefully defined restraints.

A judge, before deciding upon a sentence, must consider a presentence report setting out in detail the defendant's record and the aggravating and mitigating circumstances surrounding the offense. Moreover, the judge must choose a sentence within the framework of penalties provided by statute, and his discretion is subject to well-established procedures for review under Crim. P. 35, as well as appeal to higher courts. In stark contrast, there is neither review of nor appeal from a district attorney's "sentencing" decision to invoke the habitual criminal act. This aspect alone denies due process.

In my view the General Assembly did not intend to delegate to district attorneys such broad, unrestrained and unreviewable power. Indeed if such a delegation had been intended, the Act would be an unconstitutional delegation of legislative power without adequate standards. *Elizondo v. State,* 194 Colo. 113, 570 P.2d 518; *Colorado Anti-Discrimination Comm'n v. Case,* 151 Colo. 235, 380 P.2d 34 (1962); *Casey v. People,* 139 Colo. 89, 336 P.2d 308 (1959).

In *Berra v. United States,* 351 U.S. 131, 138-40, 76 S.Ct. 685, 690-91, 100 L.Ed. 1013, 1020-21 (1956), Mr. Justice Black (in a dissent with which Mr. Justice Douglas concurred) made these statements which apply equally in this situation:

"I think we should construe these sections so as not to place control over the liberty of citizens in the unreviewable discretion of one individual — a result which seems to me to be wholly incompatible with our system of justice. . . . Criminal statutes, which forfeit life, liberty or property should be construed narrowly not broadly.
* * * *

"A basic principle of our criminal law is that the Government only prosecutes people for crimes under statutes passed by Congress which fairly and clearly define the conduct made criminal and the punishment which can be administered. This basic principle is flouted if either of these statutes can be selected as the controlling law at the whim of the prosecuting attorney. . . . 'For, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself.' *Yick Wo v. Hopkins*, 118 U.S. 356, 370. A congressional delegation of such vast power to the prosecuting department would raise serious constitutional questions. Of course it is true that under our system Congress may vest the judge and jury with broad power to say how much punishment shall be imposed for a particular offense. But it is quite different to vest such powers in a prosecuting attorney. A judge and jury act under procedural rules carefully prescribed to protect the liberty of the individual. Their judgments and verdicts are reached after a public trial in which a defendant has the right to be represented by an attorney. No such protections are thrown around decisions by a prosecuting attorney. Substitution of the prosecutor's caprice for the adjudicatory process is an action I am not willing to attribute to Congress in the absence of clear command. Our system of justice rests on the conception of impersonality in the criminal law. This great protection to freedom is lost if the Government is right in its contention here. . . .
"The Government's contention here also challenges our concept that all people must be treated alike under the law. This principle means that no different or higher punishment should be imposed upon one than upon another if the offense and the circumstances are the same. . . ."

In *State v. Cory*, 204 Ore. 235, 282 P.2d 1054 (1955), the Oregon Supreme Court held unconstitutional the portion of that state's habitual criminal act which gave prosecutors unbridled discretion whether or not to apply the act to persons whose prior records did not include crimes of violence. The Oregon Court noted:
"In the portion of the statute being considered there is no yardstick or semblance of classification which would enable the district attorney to determine under what circumstances an information should be filed. The exercise of an absolute discretion is vested in the district attorney in such a circumstance. In other words, the fate of persons, even to the extent of life

imprisonment, who have committed the same acts under the same circumstances and in like situations is determined by the whim and caprice of the district attorney" 282 P.2d at 1056.

The Oregon statute was held to violate the equal protection clauses of both the state and federal constitutions. The same reasoning applies here. *See also State v. Lee*, 87 Wash.2d 932, 558 P.2d 236, 241-45 (1976) (dissenting opinion by Rosellini, J. joined by Utter, J.).

In summary, I would hold the "little" habitual criminal act unconstitutional as applied to this defendant because it constitutes cruel and unusual punishment, it denies him due process and equal protection of the laws, and it unconstitutionally delegates legislative and judicial power to district attorneys. I would affirm the conviction for possession of burglary tools.