OPINION
BIRDSALL, Judge.
The appellant was adjudged guilty of five counts of attempted theft following jury verdicts. Two of the convictions were for misdemeanors since they were found to involve property with a value less than $100. Two were felonies involving property over $100 but under $1,000 in value. Count V was the most serious, a felony with property valued over $1,000. The appellant was given time served for the misdemeanors, but sentenced to concurrent terms of imprisonment for the felonies, the longest being for 10 years. These were enhanced sentences since the state invoked A.R.S. § 13-604(H) whereby two of the felony convictions were counted as priors. The offenses were not committed on the same occasion but were consolidated for trial purposes. The offenses were committed on May 14,1980, May 19, 1980, June 19, 1980, August 7, 1980, and January 15, 1981.
The issues presented by the appellant are:
1) Insufficiency of the value evidence,
2) Testimony allowing an inference of prior bad acts,
3) Prosecutor’s closing argument,
*305 4) Instructions given, and
5) Unconstitutionality of A.R.S. § 13-604(H).
We affirm.
The facts giving rise to the charges against the appellant are reminiscent of those related in State v. Vitale, 23 Ariz.App. 37, 530 P.2d 394 (1975). The police equipped one of their officers with an electronic recording and listening device. The officer went to the appellant’s place of business and offered to sell him stolen property.[1] The appellant’s business was buying, selling and repairing equipment and machinery. The appellant accepted offers, not once, but on at least five occasions. Thus the thefts which were “attempted” were within the definition in A.R.S. § 13-1802(A)(5): “A person commits theft if, without lawful authority, such person knowingly controls property of another knowing or having reason to know that the property was stolen.” In the course of the dealing not only recorded conversations but some video tapes and wiretaps[2] were obtained and became evidence against the appellant.
The evidence of guilt was overwhelming. Not even the appellant suggests otherwise. We now turn to the issues on appeal.

Valuation Evidence

The principal evidence of value was the testimony that with respect to each item of property an officer had purchased it at a retail store in Tucson for a given price. The appellant contends the retail price is not the criteria by which to determine value in a sale between two private individuals, or a purchase by or to a wholesaler. He urges that the traditional fair market value definition, “the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into a transaction for the purchase or sale of the property”, should be the rule in a theft case. See State v. Coleman, 19 Wash.App. 549, 576 P.2d 925, 926 (1978) which contains the foregoing definition. An instruction containing this definition was requested by the appellant and refused. Instead the court instructed only that value means the fair market value of the property at the time of the theft. See A.R.S. § 13-1801(8).
The two counts, one and four, were charged as felonies. The evidence showed the property was purchased for over $100 in each case but the jury found its value to be less than $100. The property involved in count two was an unused 9" Rockwell Table Saw purchased at retail for $189.74. Count three involved a 10" Tool Craft table saw, retail price $201.24 and ten 40-piece ratchet sets sold at retail for $134.40, total $335.64. The most serious offense, count five, showed three 350 cubic inch Chevrolet engines, value approximately $2,250, a Ford engine, $1,400 and 37 new tires, value approximately $1,635. We find there was more than sufficient evidence of value to support the theft classification.

“Prior Bad Acts"

The state apparently believed it necessary to show why the police initiated the contact with the appellant. It is the evidence of these preliminary matters which the appellant contends tarnished him by suggesting “prior bad acts”. The appellant’s argument is directed to the following testimony of Sgt. Emery Collins:
“Q. (By Mr. Davidon) How was it that D.P.S. or T.P.D. agents, officers, police officers, would go to a person to sell them merchandise on the first time, what general requirements were there prior to that such a sale being made?
A. (The Witness) Okay. Before one of the officers would approach any individual he would have to have prior knowledge from some source that that *306 person was involved in the dealing of stolen property.
Q. (By Mr. Davidon) Did the policy that you adopted require that the individual officer who went to a person had to have such knowledge or that the information be available to you?
A. (The Witness) The officer would have to have information which would be passed on to him either by a reliable source, other police officers within the unit.
In other words, he didn’t have to have personal knowledge, but he would be given that knowledge if he happened to be the undercover police officer in that case.
Q. (By Mr. Davidon) Prior to May 14, 1980, sir, did you have a conversation with Len Schlesinger?
A. Yes, I did.
Q. And did that conversation concern Neal Buchholz?
A. Yes, sir.”
This testimony strongly implies prior criminal conduct by the appellant of the same nature as the charges in the case. It constitutes grounds for a mistrial unless some exception for its admission exists. See State v. Smith, 123 Ariz. 243, 599 P.2d 199 (1979).
Before his mistrial motion the appellant made timely objection to the introduction of this evidence. The state contends that the evidence was properly admitted to meet remarks of appellant’s counsel in his opening statement. There counsel emphasized the multiple sales over the long time period, the number of officers involved, and the utilization of the bugging device. He argued that the appellant was “baited”. The state also contends that if the admission of this testimony was error it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Adamson, 136 Ariz. 250, 665 P.2d 972 (1983). We agree with this latter contention. The evidence of the appellant’s guilt was proven by recordings and moving pictures. Not once, but five times, he convicted himself. It would be an injustice to reverse because the jury heard that the reason the police went to the appellant was because they believed he was a “fence”. The ultimate question is whether, without this evidence, this court can say beyond a reasonable doubt the jury would have found the appellant guilty. State v. McVay, 127 Ariz. 450, 622 P.2d 9 (1981). We have no doubt that the jury would have reached the same result here without the objectionable testimony.

Prosecutor’s Argument

The prosecutor argued in closing that without a market for what a burglar steals we would have fewer burglaries. The appellant acknowledges that generally arguments about the prevalence of crime have been permitted, but contends the argument here goes too far. See State v. Sullivan, 130 Ariz. 213, 635 P.2d 501 (1981). The thrust of the appellant’s argument is that the prosecutor mislabeled him as a trafficker in stolen property, as a “fence”, whereas he was not charged with trafficking. We disagree. The appellant was charged with making five separate purchases of property he believed stolen over a period of eight months. These were the charges submitted to the jury. We find the argument to be well within the limits allowed by our supreme court.

Instructions

The trial court gave the following instructions requested by the state:
“Proof of the purchase or sale of stolen property by a dealer in property, out of the regular course of business, or without the usual indicia of ownership other than mere possession, unless satisfactorily explained, gives rise to an inference that the person buying or selling the property was aware of the risk that it had been stolen. A.R.S. § 13-2305(3). ‘Dealer in property’ means a person who buys and sells property as a business. *307 The State is not required to prove that the defendant was a dealer in the exact same type of property which forms the basis of the charges.” See A.R.S. § 13-2301(B)(1)
The appellant argues the instructions pertained only to a charge of trafficking, A.R.S. § 13-2307, yet the appellant agrees that the inference may be used to prove theft. We find no error.

Constitutionality Issue

We turn now to the appellant’s final two arguments which we combine for our discussion. Both concern A.R.S. § 13-604(H). That statute, which was invoked here and which resulted in an enhancement of sentence, provides:
“Convictions for two or more offenses not committed on the same occasion but consolidated for trial purposes, may, at the discretion of the state, be counted as prior convictions for purposes of this section. Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section.”
The appellant first contends that since the use of this enhancement provision is “at the discretion of the state” that it violates the appellant’s due process rights and is also unconstitutional for equal protection reasons. He agrees that statutes providing longer periods of incarceration for habitual offenders are constitutional and that some selectivity in the use of such statutes by the prosecution does not violate constitutional edicts, but he claims if the statute is capable of arbitrary and discriminatory application it is unconstitutional. The thrust of his argument is that the state has “unbridled discretion” to have the convictions treated as prior convictions and that no guidelines are provided for the state to follow.
The trial court found that it had no discretion, that the filing of the “allegation of prior convictions” arising from the invocation of § 13-604(H) had to be allowed and that the enhancement of the sentences was mandatory. No doubt the trial court was following State v. Birdsall, 116 Ariz. 112, 568 P.2d 419 (1977). Although that case arose prior to our new criminal code we also find it controlling. In Birdsall the trial court dismissed an allegation of prior conviction after the return of the jury verdict on the substantive charge. The reason given was “... the court believes it should have discretion in the sentencing ____” 116 Ariz. at 113, 568 P.2d 419. The statutes in effect under the former criminal code, A.R.S. § 13-1649, provided for a greater range of penalties when the defendant had been previously convicted. A.R.S. § 13-1649(B), read:
“The punishments prescribed by this section shall be substituted for those prescribed for a first offense if the previous conviction is charged in the indictment or information and admitted or found by the jury.”
A.R.S. § 13-1649(C) read:
“The court in its discretion may allow the allegation of a prior conviction at any time prior to trial, provided that when the allegation is filed, the state must make available to the defendant a copy of any material or information obtained concerning the prior conviction.”
The criminal rule was the same, Rule 13.-5(a), 17 A.R.S., reading:
“Prior Convictions. The prosecutor may amend an indictment, information or complaint to add an allegation of one or more prior convictions within the time limits of Rule 16.1(b).”
The Arizona Supreme Court held, in Birdsall, that except for a motion to file after the expiration of the time period, the filing of the allegation of prior conviction was solely within the discretion of the prosecutor. The court held the discretion given the court in former A.R.S. § 13-1649(C) was limited to a late request coming within 20 days from the trial date. Rule 16.1(b).
Although A.R.S. § 13-604 was enacted after Birdsall as a part of the new criminal code, we nevertheless find the holding in Birdsall applicable. The state is given discretion to file, or not to file, the allegation. The provision for the court’s discretion now contained in A.R.S. § 13-604(K), “The *308 court in its discretion may allow the allegation of a prior conviction ... at any time prior to trial ... ”, is identical to the language of former A.R.S. § 13-1649(C). Although § 13-604(H) adds the different twist providing for the use of current convictions on charges tried at the same time, it is still the “allegation of a prior”.
The Birdsall opinion does not discuss the constitutional questions except to note that this court in the vacated opinion of State v. Birdsall, 116 Ariz. 117, 568 P.2d 424 (1977), which affirmed the trial court, “felt a contrary holding would amount to a denial of equal protection for those whose prior conviction allegations came in the indictment.” 116 Ariz. at 113, 568 P.2d 419.[3] Nevertheless the decision of the supreme court to accept review, vacate our opinion, reverse and hold that the filing of the allegation was within the prosecutor’s sole discretion constitutes a rejection of the equal protection analysis made by this court in affirming.
We believe, however, that we should directly answer the appellant’s constitutional arguments. In this regard, we are compelled to note that the appellee has failed to address the constitutional question presented. The appellee only asserts that A.R.S. § 13-604(H) has been “reviewed and upheld on several occasions by the courts of this state, citing State v. Bly, 127 Ariz. 370, 621 P.2d 279 (1980); State v. Hannah, 126 Ariz. 575, 617 P.2d 527 (1980); Davis v. Superior Court, 126 Ariz. 568, 617 P.2d 520 (1980); State v. Rybolt, 133 Ariz. 276, 650 P.2d 1258 (App.1982); State v. Dixon, 126 Ariz. 613, 617 P.2d 779 (App.1980). Although Bly contains a helpful discussion of the sentencing concepts of our new criminal code, it does not address the due process and equal protection arguments which are made in this appeal. Bly does reject double jeopardy and double punishment arguments directed at provisions of A.R.S. § 13-604, but not subparagraph H.
Bly does contain the following statement:
“[Wjithin perimeters set by our federal and state constitutions, the roles of the courts, penal institutions, and parole authorities are defined by the legislature. State v. O’Donnal, 110 Ariz. 552, 521 P.2d 984 (1974). The legislature, having determined what punishment is appropriate for a given crime, leaves to the judiciary the exercise of a certain amount of discretion in fitting punishment to the circumstances of the particular crime and the individual defendant, [citations omitted] Unless the punishment is so severe as to be disproportionate to the crime [citation omitted] the judiciary has discretion only to the extent provided by the legislature.” 127 Ariz. at 371-72, 621 P.2d 279.
Although the appellant does contend generally that his sentences were disproportionate to the crimes, that is not the issue which he presents. Contrary to several of the appellant’s assertions in his brief, the trial court here was left with considerable sentencing discretion. The trial court actually pronounced the presumptive sentences. The sentences could have been aggravated or mitigated. See A.R.S. § 13-702.
That the prosecutor can alone decide whether to invoke the statute, A.R.S. § 13-604(H), does not violate either due process or equal protection.
The appellant concedes that some selectivity in the use of “habitual criminal statutes” is not unconstitutional. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). He argues that the statute is capable of arbitrary and discriminatory application, citing Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). In that opinion, the supreme court held that an ordinance of the City of San Francisco giving its supervisors, at their discretion, authority to prohibit laundry businesses except in buildings of brick or stone — thereby putting all Chinese laundries out of business — was unconstitutional. The court found illegal discrimination in the enforcement of the ordinance based on race. No *309 such unlawful discrimination exists here. It was not the possibility of discrimination that made the ordinance discriminatory, it was its use. We have no such discriminatory use here.
The appellant nevertheless contends that where a prosecutor is given absolute discretion, guidelines must be provided, citing Berra v. U.S., 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956). The appellant must have reference to the dissent of Justice Black since the opinion is directly to the contrary, holding that when the same conduct may be either felonious or a misdemeanor, the government makes that choice, not the judge and not the jury. The appellant also cites State v. Cory, 204 Or. 235, 282 P.2d 1054 (1955), and People v. Anaya, 194 Colo. 345, 572 P.2d 153 (1977), which are authority for his position. These cases merely demonstrate a difference of opinion and are not controlling. On the claim of unequal protection, we are persuaded by Oyler v. Boles, supra, which held that the equal protection due under the Fourteenth Amendment to persons sentenced as habitual criminals is not denied by a state’s failure to prosecute others coming within the statutory standards. Furthermore, the court held that the conscious exercise of selectivity in enforcement of a state habitual criminal statute does not violate the equal protection clause where the selection is not deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification. See also Carlesi v. New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914); McDonald v. Commonwealth, 173 Mass. 322, 53 N.E. 874, affirmed 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); Cross v. State, 96 Fla. 768, 119 So. 380 (1928); State v. LePitre, 54 Wash. 166, 103 P. 27 (1909). And see State v. Rowe, 93 Wash.2d 277, 609 P.2d 1348 (1980), which reasons:
“... it is within the prosecuting attorney’s discretion to file charges or refuse to charge for reasons other than the mere ability to establish guilt. He may consider a wide range of factors in addition to the strength of the state’s case in deciding whether prosecution would be in the public interest.” 609 P.2d at 1353.
For these same reasons selective enforcement of a habitual criminal statute does not violate equal protection. See also State v. Sisneros and Dominguez, 137 Ariz. 327, 670 P.2d 721 (1983). The U.S. Supreme Court, has held that legislation similar to ours meets due process requirements. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). And see United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); State v. King, 365 Mo. 48, 275 S.W.2d 310 (1955); Poppe v. State, 155 Neb. 527, 52 N.W.2d 422 (1952); Hunter v. State, 375 P.2d 357 (Okl.Cr.1962) overruled on other grounds; Surratt v. Commonwealth, 187 Va. 940, 48 S.E.2d 362 (1948).
We hold that the provisions of A.R.S. § 13-604(H) do not violate due process or equal protection and are not therefore unconstitutional.
Affirmed.
HOWARD, C.J., and HATHAWAY, J., concur.

. As in Vitale the property was not really stolen, therefore the "attempt" charge.

. The telephone calls recorded were between an officer and the appellant. No authorization was required.

. A subsidiary question in Birdsall, whether an allegation of prior could be contained in an indictment, is of no significance here.