522 P.2d 29

The STATE of Arizona, Appellee,

v.

James Darrell COX, Appellant.

No. 2709.

Supreme Court of Arizona,
In Banc.

May 13, 1974.

Gary K. Nelson, Atty. Gen., by Grove M. Callison, Asst. Atty. Gen., Phoenix, for appellee.

J. R. Babbitt, Flagstaff, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant James Darrell Cox from a judgment of guilt to the crime of transportation of marijuana, § 36–1002.07 A.R.S. Imposition of sentence was suspended and the defendant placed on two years' probation.

The defendant raises the following questions on appeal:

Was the search warrant invalid?

2. Did the failure of the State to reveal the identity of an informant until the trial constitute reversible error?

3. Was hearsay testimony of an officer regarding defendant's predisposition improperly allowed?

4. Was there entrapment as a matter of law?

The facts necessary for a determination of the questions before us are as follows. In the early part of May 1972 Danny Whitney was arrested in Flagstaff, Arizona, for possession of LSD and possession of LSD for sale. He made a deal with Agent Audsley of the Department of Public Safety to act as an informant in exchange for dismissal of the charges against him. This was to be done after Whitney

produced information which led to three arrests. Agent Audsley indicated that he was interested in learning about the activities of Hal Householder, whom he suspected of narcotics violations. Approximately two and one-half weeks after his arrest Whitney went to Householder's residence and purchased $10 worth of "speed," pursuant to instructions of Agent Audsley. The defendant Cox was not present at this transaction. On or about 25 May 1972 Whitney returned to Householder's residence and arrived in the midst of a conversation among several persons including the defendant, concerning the possibility of getting some marijuana. Whitney indicated that he was leaving for Tucson the next day, and if they could collect enough money and were to drive down to Tucson, he could probably help them find some marijuana. When he left, he gave Householder his Tucson telephone number.

The testimony at trial indicates that the defendant Cox did not offer to contribute any money toward the proposed purchase, but he did offer to drive his car to Tucson. On the following day the defendant and his three original codefendants left Flagstaff and drove to Phoenix. They spent the evening in Phoenix, and the next morning one of the four called Whitney in Tucson to inquire whether their trip would be worthwhile. Whitney assured the caller that he could find them some marijuana, so the defendant and his companions proceeded on to Tucson. When they arrived in Tucson they met Whitney and another person known at the time only as "Chrome Boots" at Helsings Restaurant. From there the six of them left in Whitney's car to find some marijuana. Whitney apparently stopped at several residences before finally finding someone with some marijuana to sell. Three kilos of marijuana were purchased and Whitney then returned the defendant and his three companions to Helsings Restaurant. He observed one of the four place the marijuana in defendant's car, and noted the physical description of the car and the license plate number. After the defendant drove away, the infor-

mant Whitney called Agent Audsley in Flagstaff at approximately 3:00 p. m. He told Audsley that he had seen the marijuana in the defendant's car, gave him the description and the license number, and informed him that they were heading back to Flagstaff. At approximately 7:00 p. m. that same day Agent Audsley secured a search warrant for the defendant's car. The warrant was executed at around 8:45 p. m. when the defendant was approximately 30 miles inside the southern border of Coconino County. The search revealed the three kilos of marijuana, a baggie of marijuana, some "roaches" in a cigarette case, and a package of "Zigzag" cigarette wrappers.

The defendant, along with his three codefendants, was charged in two counts: possession of marijuana and transportation of marijuana. Pursuant to motion the trial of the defendant Cox and his codefendant Householder was severed from that of the other two codefendants. Later, on stipulation, the defendant's and Householder's trial was also severed. Prior to trial the defendant moved to suppress the seized evidence on the grounds that the search warrant was invalid. The motion was denied. On 11 December 1972 defense counsel filed a motion to disclose the identities of the "informant or informants in this case." The prosecutor indicated a willingness to comply with the request without resort to court order, and in fact revealed the identity of the informer Whitney.

On the day of the trial the trial judge dismissed that count of the information charging the defendant with possession, and Cox went to trial on the charge of transportation only. The jury returned a verdict of guilty. The trial judge pronounced judgment thereon, and placed defendant on two years' probation. From such judgment the defendant appeals.

## WAS THE SEARCH WARRANT INVALID?

After receiving information from the informant in Tucson, Agent Audsley pre-

pared an affidavit on a printed "Affidavit for Search Warrant" form which stated: " * * * That the following facts establish probable cause for believing that grounds for the issuance of a search warrant for the aforementioned items exist:

\* \* \* \* \* \*

"On the day of <u>MAY 26</u>, 19<u>7</u>2, at approximately <u>8.00</u> P.M., the affiant learned the following information in the following manner: AFFIANTS FELLOW OFFICER RON MASKELL TOLD AFFIANT THAT HE (MASKELL) HAD RECEIVED INFORMATION BETWEEN MAY 25, 1972 and MAY 26, 1972 FROM A CONFIDENTIAL RELIABLE INFORMANT THAT HAL HOUSEHOLDER AND SOME OTHER 'GUYS' WERE PUTTING THEIR MONEY TOGETHER TO BUY A LARGE AMOUNT OF MARIJUANA IN TUCSON AND THAT THEY WOULD BE LEAVING FOR TUCSON ON THE NIGHT OF MAY 26, 1972. OFFICER MASKELLS' INFORMANT IS RELIABLE BY VIRTUE OF THE FACT THAT THE INFORMANT HAS GIVEN HIM INFORMATION A MINIMUM OF THREE TIMES IN THE PAST AND OFFICER MASKELL HAS BEEN ABLE TO VERIFY THIS INFORMATION THROUGH INDEPENDENT INVESTIGATION. ALSO, THE INFORMANT HAS GIVEN INFORMATION THAT HAS RESULTED IN THE ARRESTS OF AT LEAST TWO PERSONS.

"FURTHERMORE, BETWEEN THE DATES OF MAY 1, 1972 AND MAY 26, 1972, AFFIANT AND AFFIANTS FELLOW OFFICER RON MASKELL HAVE CONDUCTED PART TIME SURVEILLANCE OF HAL HOUSEHOLDERS' RESIDENCE LOCATED AT 1921 N. FIRST ST. AND ONE OCCASION OFFICER MASKELLS' CONFIDENTIAL INFORMANT OBTAINED A USABLE AMOUNT OF DANGEROUS DRUGS FROM HAL HOUSEHOLDER WHILE INSIDE THE RESIDENCE OF 1921 N. FIRST ST., WHILE UNDER OFFICER MASKELL'S DIRECTION.

\* \* \* \* \* \*

"ON the date <u>MAY 27, 1972</u> * * * the affiant received information from a <u>RELIABLE</u> (confidential) informant. This information was as follows: THAT FOUR WHITE MALES, ONE WITH LONG RED CURLY HAIR HAD LEFT TUCSON ARIZONA AT APPROX. 1:00 P/M IN A 1972 FIAT TAN IN COLOR FOUR DOOR ARIZONA LICENSE MSN 370 ENROUTE TO FLAGSTAFF AND THAT THEY WERE IN POSSESSION OF A USABLE AMOUNT OF MARIJUANA. AFFIANT RECEIVED THIS INFORMATION AT APPROX. 3:00 P/M BY LONG DISTANCE PHONE CALL FROM TUCSON ARIZONA.

"The affiant believes the informant to be reliable because: THE INFORMANT HAS GIVEN INFORMATION TO AFFIANT A MINIMUM OF THREE TIMES IN THE PAST WHICH AFFIANT HAS BEEN ABLE TO VARIFY THROUGH INDEPENDENT INVESTIGATION. ALSO THE INFORMANTS INFORMATION HAS RESULTED IN THE ARREST OF A MINIMUM OF ONE PERSON IN THE PAST.

"The affiant believes the information given him is reliable because the informant obtained this information in the following manner; AFFIANTS INFORMANT DID SEE A USABLE AMOUNT OF MARIJUANA IN THE POSSESSION OF ALL FOUR C/M's WHILE THEY WERE INSIDE A 1972 FIAT TAN FOUR DOOR ARIZONA LICENSE MSN 370 WHILE THE VEHICLE WAS IN TUCSON ON MAY 27, 1972.

"The affiant wishes to keep the identity of said informant secret and confidential to preserve said informant's future use-

fulness and effectiveness to law enforcement officers and because disclosure of said identity would tend to endanger the informant's safety and well being.

"Affiant believes that the following information demonstrates good cause, pursuant to A.R.S. 13–1447, for permitting this warrant to be served at any time of the day or night. DUE TO THE MOBILITY OF THE VEHICLE AND THE POSSIBILITY THAT THE VEHICLE MAY NOT ARRIVE IN THE FLAGSTAFF AREA UNTIL THE NIGHT TIME, AFFIANT FEELS THAT A NIGHTTIME WARRANT IS NECESSARY.

"Wherefore affiant prays that a search warrant issue commanding that an immediate search be made of the persons, premises and buildings, and vehicles described herein for the property and things herein described, and that the same be retained in custody of affiant or in custody of the agency which affiant represents and disposed of according to law, pursuant to A.R.S. 13–1450.

/s/ David L. Audsley    546

Affiant    Badge or I.D. #

ARIZONA DEPARTMENT OF PUBLIC SAFETY

Law Enforcement Agency

"SUBSCRIBED AND SWORN TO before me this 27th day of MAY, 1972.

/s/ Joseph C. Garcia

Judge, Justice of the Peace or Magistrate

Of Flagstaff Justice Court. "

■ The defendant contends that the warrant which was issued based upon the foregoing affidavit was invalid because there was no probable cause to believe that at the time of the affidavit the contraband was being possessed in Coconino County and in that regard the affidavit contained an admitted falsehood. The defendant points to the printed portion of the affidavit which was typed in by the officer and reads as follows:

"Your affiant * * * deposes and says: That * * * in the County of COCONINO * * * the crime of UNLAWFUL POSSESSION OF MARIJUANA (was) (is being) committed * * *.

" * * * the affiant has probable cause to believe and he does believe that there is now in the possession of HAL HOUSEHOLDER AND THREE OTHER C/M SUBJECTS * * * in the County of COCONINO * * * in a vehicle described as: 1972 FIAT TAN ARIZONA LICENSE MSN 370 certain property or things * * * "

We disagree with the defendant's assertion that the warrant was invalid because the affidavit contained an "admitted falsehood."

While it may be that the officer should have exercised more care in filling in the printed portion of the affidavit, the affidavit, taken as a whole, indicates that this was a mere inadvertence at the most, and from a reading of the affidavit in its entirety it is clear that the automobile with the four suspects was at the time on its way to Coconino County though not in Coconino County at the time. The affiant specifically sought a nighttime warrant for the reason that the "vehicle may not arrive in the Flagstaff area until the night time" and we believe the magistrate was fully apprised that the warrant was requested for an offense to be committed in Coconino County at some future time. The magistrate was not in any way misled any more than the trial court or this court as to the fact that at the time the affidavit was sworn to, the automobile had not yet reached Coconino County. The alleged falsehood did not affect the integrity of the warrant.

Also, we believe that the affidavit clearly states probable cause, in accordance with the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637

(1969). We have stated, quoting our Court of Appeals:

" 'The United States Supreme Court has laid down a two-pronged test for evaluating whether or not probable cause exists to issue a warrant. (citations omitted) The magistrate must be presented with (1) facts showing the informant is reliable and (2) the underlying circumstances on which the substance of the "tip" is made. And, as further clarified in *Spinelli,* supra, the magistrate must generally assure himself that the information is not merely based upon casual rumor or the individual's general reputation.' State v. Ramos, 11 Ariz.App. 196, 199, 463 P.2d 91, 94 (1969)." State v. Kasold, 110 Ariz. 563, 565, 521 P.2d 995, 997 (filed April 17, 1974).

■ Here, the affidavit, taken as a whole, demonstrates the circumstances of the possession and transportation of marijuana. The affidavit states that the car containing the marijuana was traveling from Tucson to Flagstaff; the substance of the informer's tip was clearly set forth —namely, that he had seen the marijuana in the subject car; facts demonstrating the informer's reliability were set forth; and corroborating facts from the affiant's own knowledge, and that of another agent were set forth.

Defendant further contends however, that the warrant was invalid as being directed to a future crime rather than an existing crime, citing:

"It is suggested that the prosecution often needs to obtain search warrants in advance, in order to have them in readiness to seize the liquors at the moment of deposit before they can be concealed; that such a procedure is very efficacious and even essential to circumvent the cunning of liquor sellers; and that the rule here evolved will nullify it. If such practice obtains, it should be nullified. "No prosecution can be lawfully begun, no criminal process lawfully issued, before the offense is committed. The practice suggested, if it obtains, is a scandalous abuse of legal process, based upon the perjury of the complainant, and subjecting all concerned in it to penalties and damages." State v. Guthrie, 90 Me. 448, 453, 38 A. 368, 369–370 (1897).

And:

" * * * Moreover, the facts or the grounds alleged must relate to an existing crime. As was said in State v. Miller, 329 Mo. 855, 46 S.W.2d 541 (1932), * * *: 'The Constitution and the statutes enacted pursuant thereto necessarily contemplate that the facts warranting the conclusion of probable cause must exist at the time of such judicial finding, not that they will or may come into existence thereafter.', and further, 'A search warrant cannot legally be issued upon a showing, not that the law has been or is being violated, but only that it may or probably will be violated at a time, near or remote, in the future' * * *." United States ex rel. Campbell v. Rundle, 327 F.2d 153, 162 (3rd Cir. 1964). See also Simmons v. State, 286 P.2d 296 (Okl.1955).

■ The instant case is easily distinguished as the crime of transportation was being committed at the time, albeit not in Coconino County. But even if the cases cited by the defendant were on all fours, this court would, absent a United States Supreme Court case to the contrary, reject the holding therein. An "anticipatory or delayed execution" warrant is the only practical way that a warrant can be obtained to search a moving automobile on the highway. Law enforcement officials should be encouraged to obtain a warrant from the impartial and neutral magistrate whenever possible. As long as the magistrate is fully and fairly apprised of the facts, it is reasonable to issue a warrant to be served at some time not unreasonably distant for a crime, as here, that is in progress or it is reasonable to assume will be committed in the near future.

We hold that the motion to suppress was properly denied.

## IDENTITY OF THE INFORMANT

■ On 11 December 1972 the defendant filed a motion for disclosure of the informant or informants in the case. The State voluntarily complied with the request, and revealed that Danny Whitney was working in the capacity of an informant.

Whitney testified at the trial and it became apparent that another person, "Chrome Boots," was a material witness to the planning in Flagstaff for the purchase of the marijuana and was also in Tucson when the marijuana was purchased. "Chrome Boots" was an informer, but not on this case.

"Chrome Boots" was eventually identified as one Clarence Green. Whitney further testified that to the best of his knowledge Green was not an informant in this particular case. Whitney's testimony was supported by the testimony of Agent Audsley and Officer Maskell.

After a discussion in chambers, where defense counsel argued that he had been misled by the State's response to his request for disclosure of the identity of all informants, the court granted a four day continuance and directed the county attorney to try and locate Green. Green was never located, although there was testimony that his whereabouts were known up until Christmas, 1972.

Agent Maskell of the Department of Public Safety testified concerning Green's role in the case:

"BY MR. VAN ORMAN:

\* \* \* \* \* \*

"Q Would you say it was a coincidence that Clarence happened to be there at the same time Danny was working on the case?

"A Yes, sir.

"Q You didn't instruct Clarence to obtain information from Householder, specifically direct him to that house?

"A No. I did not direct him to that house."

Clarence Green or "Chrome Boots" was a material witness but was not an informant in this case and did not come under the motion of the defendant. We find no error.

## RECEIPT OF EVIDENCE OF PRIOR BAD ACTS

Over the defendant's objection Agent Maskell was able to testify concerning a prior sale of marijuana by the defendant in 1970. The agent testified:

"Q (By Mr. Van Orman) Did you meet with an informant, with someone who did have contact with him?

"A Yes, sir. I did.

"Q Who was that?

"A This was a confidential reliable informant.

"Q And what was the . . . Did this informant speak with you concerning the defendant?

"MR. BABBITT: Objection, your Honor.

"THE COURT: Yes or no.

"THE WITNESS: Yes, sir. He did.

"MR. VAN ORMAN: And what did he tell you?

"MR. BABBITT: Objection, your Honor. This is just really rank hearsay. We don't even know who is speaking.

\* \* \* \* \* \*

"THE COURT: Are you going into hearsay, counselor? Is this what you are going to do or are you going to go into general reputation?

"MR. VAN ORMAN: Yes. We are going to go into hearsay.

"THE COURT: Reputation?

"MR. VAN ORMAN: No. We are going to show—

Mr. Van Orman again approaches the bench and a discussion ensues off the record.)

"THE COURT: All right. You may answer the question.

Overruled.

\* \* \* \* \* \*

"MR. BABBITT: Objection your Honor. We don't have the name of the informant, who was doing the saying.

"MR. VAN ORMAN: I don't think we have to reveal that. This was a confidential informant.

"THE COURT: Overruled. He may answer.

"Q (By Mr. Van Orman) What was said? What did the informant tell you?

"A This was after the informant had already met with Mr. Cox.

"MR. BABBITT: Objection. Now that is hearsay coming in and is unresponsive.

"THE COURT: What was the conversation, Officer?

"THE WITNESS: The conversation was that the informant had purchased a lid of marijuana for $10.00 from James Cox. There was further conversation also.

\*　　\*　　\*　　\*　　\*　　\*

"Q Did you . . . did you see the informant make this purchase?

"A I did not see the purchase actually take place. No, sir."

■■ There is no question that a defendant who raises an entrapment defense, as did the defendant herein, cannot object when evidence of similar transactions is introduced for the purpose of showing predisposition. State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960); State v. Turner, 104 Ariz. 469, 455 P.2d 443 (1969); State v. Petralia, 110 Ariz. 530, 521 P.2d 617 (filed April 18, 1974). But the testimony of Agent Maskell was hearsay and was properly excludable. However, in view of the other evidence in the case showing the defendant's predisposition, we do not believe the admission of Agent Maskell's testimony was reversible error.

## ENTRAPMENT AS A MATTER OF LAW

The defendant's final contention is that he was entrapped into transporting the marijuana as a matter of law. He bases that contention on the "fact" that the informant Whitney "supplied" the marijuana, as in State v. Boccelli, 105 Ariz. 495, 467 P.2d 740 (1970) and State v. McKinney, 108 Ariz. 436, 501 P.2d 378 (1972). We do not agree.

■■ Entrapment as a matter of law is established where the defendant raises a substantial and reasonable defense of entrapment which makes it patently clear that he was entrapped, and where the State has done nothing to rebut the defense. State v. Boccelli, supra; State v. McKinney, supra. In both Boccelli and McKinney the contraband was supplied by government agents. The record in the instant case supports the contention of the State that the informant did not supply the contraband to the defendant. The informant did nothing more than arrange for a sale between predisposed buyers, United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and a willing seller who had no connection with the Department of Public Safety. The jury was properly instructed on the entrapment defense, and it was not error for the court to have denied the defendant's motion for a directed verdict based on entrapment as a matter of law.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.