580 P.2d 346

**The STATE of Arizona, Appellee,**

**v.**

**Alejandro Gilbert QUINONEZ, Appellant.**

**No. 4165.**

Supreme Court of Arizona,
In Banc.

June 15, 1978.

Bruce E. Babbitt, Former Atty. Gen., John LaSota, Jr., Atty. Gen. by William J. Schafer III and Lynn Hamilton, Phoenix, Asst. Attys. Gen., for appellee.

Frondorf & Thayer by Shirley H. Frondorf, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal from judgment of guilt to the crime of sale of narcotics (heroin) of a value not less than $250 and offering to sell narcotics (heroin) of a value not less than $250, A.R.S. §§ 36–1001 and 36–1002.-02, as amended 1974, and A.R.S. §§ 13–138, 139, 140. Defendant was sentenced to not less than five or more than ten years in the Arizona State Prison on each count, to be served concurrently.

We must answer three questions on appeal:

1. Were defendant's speedy trial rights under Rule 8.2 of the Rules of Criminal Procedure and the Sixth Amendment of the United States Constitution violated?

2. Was defendant deprived of his right to confrontation and fair trial because the State's agent and informant was not made available for trial?

3. Had the defendant shown entrapment as a matter of law?

The facts necessary for a determination of this matter are as follows. On the evening of 17 June 1976, undercover agents James H. Hughes and Gray Green of the Department of Public Safety met with a heroin addict, Roger Lewis, a paid Department of Public Safety informant, and Russell Anthony Starzyk, also an addict and a friend of Lewis. The undercover agents were informed that a man known as "Al," the defendant in this case, could deal in ten ounces of heroin. The undercover agents showed $30,000 as a sign of good faith and they agreed to meet later at a nearby Holiday Inn. The next day, Lewis, Starzyk, and defendant came to Officer Hughes' room at the motel with a one ounce sample of heroin. The officer and defendant commenced negotiations for the sale of the narcotics.

Lewis and Starzyk were present, but most conversation was between the narcotics agent and the defendant. The defendant was paid for the one ounce of heroin and it was agreed that all of them would return to the motel room to consummate a larger sale of heroin. Later that afternoon, defendant returned with six ounces of heroin. After discussing the amount available, the sale was agreed upon. Officer Green, pursuant to a signal, then entered the room and the defendant was arrested.

At the trial, the defendant admitted that he participated in the heroin transaction and interposed a defense of entrapment. Defendant contended that Lewis asked him if he could purchase a large amount of heroin and that they went to a Phoenix bar where they discussed a large purchase with another unidentified third person. On the stand, defendant refused to identify this third person.

Defendant further testified that the next day Lewis, Starzyk, defendant, and the unidentified third party went to the Holiday Inn. While the third party waited outside, the others went in to negotiate the deal. Defendant and Starzyk were arrested at this time. Defendant was tried to the court, convicted, and appeals. We have jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

### SPEEDY TRIAL

Defendant was arrested on 18 June 1976 and was later released on his own recognizance. After various delays not at issue herein, the trial was set for 24 February 1977. The defendant was not present at that time. On the belief that the defendant was in federal custody, the matter was continued until 28 March 1977. On 28 February 1977, the State petitioned the Maricopa County Superior Court for a writ of habeas corpus ad prosequendum which was granted on the same day and the writ was issued to the federal authorities. At the hearing on 28 March 1978, the defendant moved to dismiss for violation of speedy trial. At that hearing his attorney stated:

"MR. HART: If I may update the Court, on the last day we were in Court, which was the 24th, at that time your secretary ascertained that the defendant was in Terminal Island, California, in a Federal institution. I made several attempts to ascertain exactly where he was and I got different answers. I have just learned today that the defendant was in fact at Chandler. I was notified yesterday."

■ Since all other time periods are accounted for, the only question is whether the time between 24 February and 28 March creates a violation of defendant's speedy trial rights. First, we must consider whether it is excluded time under Rule 8, Rules of Criminal Procedure, 17 A.R.S. Rule 8.4 reads as follows:

"Rule 8.4 *Excluded periods*

"The following periods shall be excluded from the computation of the time limits set forth in Rules 8.2 and 8.3:

a. Delays occasioned by or on behalf of the defendant, including, but not limited to, delays caused by an examination and hearing to determine competency, the defendant's absence or incompetence, or his inability to be arrested or taken into custody in Arizona."

The Comment to Rule 8.4(a) notes that the defendant's inability to be arrested or taken into custody in Arizona does not depend on a wilful absence to avoid prosecution. The example used there is the situation where the defendant does not know that charges are pending in Arizona. Here, the defendant also was not wilfully absenting himself from the jurisdiction since he was in the custody of federal authorities. Rule 8.4(a) therefore applies to the case and the thirty days should be excluded time.

■ As to the constitutional question, defendant cites *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), a case wherein the State of Texas waited six years while the defendant was serving his federal sentence and repeatedly demanding his Texas trial or dismissal of the charges. Texas contended that they had no duty to attempt to secure Smith from federal au-

thorities for trial and therefore did not try. The United States Supreme Court determined that Texas had a duty to make a diligent good faith effort to procure Smith for his Texas trial and held that they had violated his Sixth Amendment right to speedy trial.

In the case at bar, the State concedes that once it was determined that defendant was in federal custody, it had the burden to obtain his appearance in the State proceeding. *Smith v. Hooey,* supra. The defendant contends that the State had a duty to keep track of the defendant at all times so they would know when he went into federal custody and immediately initiate proceedings to have him returned to State jurisdiction. When a defendant has been released on his own recognizance, we do not believe that the State is required to know his whereabouts at all times. If defendant is taken into federal custody during this time, the Smith doctrine does not require the State to take the initiative until the State has reason to believe he is in federal or other state custody. We find no error.

## RIGHT TO CONFRONTATION AND FAIR TRIAL

The informant, Lewis, was a material witness to the transaction and therefore the State had the duty and obligation to reveal information concerning him. Rule 15, Rules of Criminal Procedure, 17 A.R.S. In the instant case, it appears that on the day the defendant was arrested, Lewis was paid $800 by the police. However, Lewis left town before the indictment was returned. He was later contacted through telephone numbers in Minnesota and Iowa about the case. Later he was advised that the matter seemed to have been taken care of and that it probably would not be necessary to appear as a witness. As it so happened, the codefendant Starzyk pled guilty and the defendant was negotiating for a plea agreement. The defendant indicated the possibility of a change in plea by the following notice:

"COMES NOW the defendant, by and through his undersigned attorney, and moves the Court to continue the trial date of December 14, 1976 for the reason that defendant would like a trial setting past January 10, 1977 at which time there will be a change of plea in this cause."

After this, the informant Lewis dropped out of sight. Both the defense counsel and the prosecution were unable to find him. The court made the following finding regarding Lewis:

"Secondly, the Court finds that the State is unable to supply Mr. Lewis in this particular matter. Though they had an address for him. They tried to maintain a contact until the fall when on a reasonable assumption one of the co-conspirators pled and then the officer believed the other co-conspirator would plead soon, that the telephone number they had for the narcotics addict back in Iowa turned out to be no good.

"So it would appear that they did make a reasonable effort to make their contact in this particular instance."

There is no question about the identity of the informant Lewis. He was known to the defendant as well as to the prosecution. The State provided the information it had concerning Lewis and held nothing back. Unless the informant was still in the employ of the police, the State did not have to do any more. *State v. Demarbiex,* 111 Ariz. 441, 532 P.2d 503 (1975). We find no error.

## DID THE DEFENSE SHOW ENTRAPMENT AS A MATTER OF LAW?

The defendant admitted the sale and attempted to show entrapment as a matter of law. We do not find entrapment. The defendant's own words belie this:

"Q    And who had the heroin?

"A    I did.

"Q    How come you had it?

"A    Because I was delivering it.

"Q    You rode over with the third party?

"A    That's correct.

"Q    And then what happened?

"A    Well, we talked about money, I think, and this officer wanted to know who, where he was getting

heroin from and I told him he wouldn't be able to tell, the only way he could deal would be through me and he asked me if the price could be lowered and I told him I didn't know. I'd have to talk to the rest of the other people involved, and that's what happened. Now, we left. I left in one car in which I took the money for and we left and I got dropped off at a bar and I was, then I called, I was told to call them and tell them or something about the price that could be arranged lower or something like that, then I was picked up an hour later and brought back with the rest of the stuff."

Defendant contends that *State v. McKinney,* 108 Ariz. 436, 501 P.2d 378 (1972) applies to his case. In *McKinney,* the State provided the narcotics that were sold. We there noted that when the State supplies the narcotics, it is providing not only the opportunity but the very means of committing the offense. As the Supreme Court of Illinois stated:

" * * * While we are sympathetic to the problems of enforcement agencies in controlling the narcotics traffic, and their use of informers to that end, we cannot condone the action of one acting for the government in supplying the very narcotics that gave rise to the alleged offense. We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the *sine qua non* of the offense." *People v. Strong,* 21 Ill.2d 320, 325, 172 N.E.2d 765, 768 (1961). See also *State v. Boccelli,* 105 Ariz. 495, 467 P.2d 740 (1970).

In the instant case, by defendant's own words, there is no evidence that the heroin the defendant attempted and did sell was provided by an agent of the State. Lewis was admittedly the State's informant but the elusive third party clearly was not. The trial court was correct in finding that the defendant did not show entrapment as a matter of law. We find no error.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.