654 P.2d 23

**STATE of Arizona, Appellee,**

v.

**Willis Leroy MACK, Appellant.**

**Nos. 1 CA–CR 5111, 1 CA–CR 5112.**

Court of Appeals of Arizona,
Division 1, Department C.

Sept. 30, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

Michael V. Stuhff, Flagstaff, Robert M. Hall, Holbrook, for appellant.

OPINION

EUBANK, Judge.

Following a jury trial appellant Mack was convicted of sale of a narcotic drug (cocaine) a class 2 felony in violation of former A.R.S. § 36–1002.02.[1] He subsequently pled guilty to two unrelated counts of possession of marijuana, class 6 felonies in violation of former A.R.S. § 36–1002.05.[2] These matters were consolidated for sen-

1. Navajo County Cause Number CR–6537.

2. Navajo County Cause Number CR–6541.

tencing and on December 9, 1980 he was placed on probation for a period of six years for his conviction of sale of cocaine and was sentenced to terms of 1.9 years imprisonment on his convictions of possession of marijuana, with the marijuana convictions to be served consecutive to each other and concurrent with the cocaine sentence. He was also ordered to be incarcerated for a period of 60 days as a condition of his probation to be served concurrently with the first possession of marijuana sentence.

The testimony at the cocaine trial was brief because appellant's sole defense was entrapment. Officer Vincent Lopez, an undercover narcotics officer with the Coconino County Sheriff's Department, testified that on the evening of January 26, 1980 he went to appellant's home with a "confidential informant" named Richard Nanez. After a short conversation, Nanez went outside whereupon appellant sold Lopez a small amount of cocaine for $80.00. Nanez had apparently worked as an informant for other narcotic officers, but Officer Lopez testified that he had not met Nanez before that evening, had not had any previous conversations with him and did not know where appellant received the cocaine sold to Lopez.

In support of his entrapment defense, appellant testified that he had known Nanez for over ten years; that he knew him as a cocaine dealer who dealt all over town; that he had purchased one foil of cocaine from Nanez for $80 several days prior to the Wednesday that Nanez brought two additional foils of cocaine to his house for appellant to keep for him; that the next day he and another person, who he refused to reveal, opened the foils and examined them and "we did a little bit of it up", which meant that "we put some on our finger and rubbed it across our gums"; that he stored Nanez's two foils with his one foil in a white canister in his bedroom; that when Nanez brought Officer Lopez to his house, and then left, appellant poured the three foils, which all looked alike, from the canister onto the table and sold Officer Lopez one and one-half foils for $80; and that he kept the other one-half of the foil for his trouble.

He also testified that when he was arrested he made a statement to Officer Sterling Norgaard regarding the person who supplied him. He named a supplier, not Nanez, but at the trial claimed he had lied to Officer Norgaard in the statement but was telling the truth on the witness stand.

By the date of trial, Nanez apparently could not be located. In reliance on *State v. McKinney,* 108 Ariz. 436, 501 P.2d 378 (1972), appellant argues that because Nanez was not produced as a witness, the state failed to rebut his defense of entrapment and therefore he was entitled to a directed verdict on the issue of entrapment as a matter of law. While appellant is correct that entrapment is established as a matter of law when a defendant raises a substantial and reasonable defense of entrapment and the state fails to rebut the defense, *State v. Cox,* 110 Ariz. 603, 522 P.2d 29 (1974), here, the state rebutted the entrapment defense when it presented testimony through Officer Norgaard that when appellant was arrested, he told Norgaard the names of his suppliers of the cocaine and they did not include Nanez. Thus, where there is evidence in the record that the contraband was supplied by a third party, the defense of entrapment was substantially rebutted. *State v. Quinonez,* 119 Ariz. 208, 580 P.2d 346 (1978). Therefore, the issue of appellant's credibility regarding his entrapment defense was for the jury. *State v. Petralia,* 110 Ariz. 530, 521 P.2d 617 (1974). The trial court instructed the jury on the entrapment defense (R.A.J.I., Criminal 1.15), and by their verdict the jury rejected it, impliedly finding no entrapment. The record fully supports this conclusion since appellant's testimony was internally inconsistent and he was impeached. On the basis of lack of credibility, the jurors could disbelieve appellant.

Next, appellant argues that the trial court erred in ruling that he could not call a private investigator as an expert witness to attack the reliability, procedures and use of the "confidential reliable informant" Nanez in this case and of informants in general as

used in narcotics investigations. The witness was offered as an expert witness under Rule 702, Arizona Rules of Evidence which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ The admission of expert testimony is a question within the sound discretion of the trial court which will not be disturbed on appeal absent a clear abuse of discretion. *State v. Fierro,* 124 Ariz. 182, 603 P.2d 74 (1979). Here, although the intended relevancy of the proffered testimony is not entirely clear from the briefs, it appears that the testimony was being offered to attack the reliability of Nanez and to impeach the testimony of Officer Norgaard as to his failure to make a departmental report.

As mentioned earlier, Nanez was not presented as a witness at trial and there was no testimony that in this investigation the police in any way relied upon information given by Nanez. Thus, his reliability was not a fact in issue and the expert testimony was properly rejected insofar as it was offered to attack Nanez' reliability.

■ As to the failure of Nogaard to prepare a departmental report, no foundation was presented in appellant's offer of proof indicating that the investigator was familiar with police procedures where Officer Norgaard worked and therefore he failed to show that the witness was competent to give an expert opinion on this precise issue. *See Gaston v. Hunter,* 121 Ariz. 33, 588 P.2d 326 (App.1978). Thus, we find no abuse of discretion in precluding the testimony of the expert witness.

The dissent does a good job in collecting the entrapment cases, however, the facts here do not show a defendant without intent to violate the law. Rather, the evidence shows one who purchased, used, intended to sell and did sell cocaine and in the process made one-half foil or a $40 commission on the sale. The facts here are more similar to those in *State v. Vallejos,* 89 Ariz. 76, 358 P.2d 178 (1960).

Turning to the appeal from the pleas of guilty to two counts of possession of marijuana, appellant has presented no arguments on appeal. We have reviewed the record for fundamental error as required by A.R.S. § 13–4035 and find none.

The judgments of conviction and sentences are affirmed.

HAIRE, J., concurs.

CONTRERAS, Judge, dissenting:

I dissent. I believe that appellant established entrapment as a matter of law, and that the trial court erred in denying his motion for acquittal in CR–6537. I would reverse that conviction and the dependent conviction in CR–6541.

I believe it is necessary to briefly review some principles of the law of entrapment. There are two basic theories of the defense, as set forth in the majority and dissenting opinions in *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). The majority, and Arizona, view has been stated thus:

> The criterion of entrapment which has won general acceptance is the "subjective" or "origin of intent" test, which allows the defense only if the criminal act was the product of the creative activity of law enforcement officials. Courts applying this test make two inquiries: (1) whether there was inducement on the part of the government official, and (2) if so, whether the defendant showed any predisposition to commit the offense. Generally, therefore, where the criminal intent originates in the mind of the entrapping person, and he lures the accused into the commission of the offense charged, in order to prosecute him, no conviction may be had. Where the criminal intent, however, originates in the mind of the accused and the criminal offense is completed, the fact that a per-

son acting as a decoy for law enforcement officials furnished the accused an opportunity for commission of the offense, or that the accused was aided in the commission of the crime, in order to secure the evidence necessary to prosecute him, constitutes no defense. In other words, the entrapment defense is not available where the officers merely afford an opportunity to one intending to violate the law.

Annotation, Modern Status of the Law Concerning Entrapment to Commit Narcotics Offense—State Cases, 62 A.L.R.3d 110, 117–118 (1975). Courts in a few states have followed the *Russell* dissent and "have adopted instead an 'objective' test of entrapment, whereby the court considers only the nature of the police activity involved, without reference to the predisposition of the particular defendant." *Id.* at 119.

There is a class of entrapment cases, of which this is allegedly one, in which a government agent or informer supplies the drugs to the defendant, who then sells them to another government agent and is arrested therefor. This is recognized as the most egregious form of entrapment and courts purportedly subscribing to the "subjective" test will reverse convictions when the drugs involved were supplied by an agent or informer. It may be that supply by an informer conclusively demonstrates that the intent originated with the government and not the defendant, but it also seems clear that the courts seek to curb what is seen as police overreaching. For example, in *State v. Boccelli*, 105 Ariz. 495, 467 P.2d 740 (1970), the Arizona Supreme Court stated:

The defense of entrapment is founded on the public policy that the tempting of innocent persons into violations of the law by enforcement officers will not be tolerated.

105 Ariz. at 496, 467 P.2d at 741; *see also State v. McKinney,* 108 Ariz. 436, 501 P.2d 378 (1972); *People v. Dollen,* 53 Ill.2d 280, 290 N.E.2d 879 (1972); *Jones v. State,* 285 So.2d 152 (Miss.1973); *Froggat v. State,* 86 Nev. 267, 467 P.2d 1011 (1970). Thus, it is clear that in the "supply" cases, concerns about police overreaching (i.e., the "objective" test), are just as important as doubt about the true origin of the criminal intent (i.e., the "subjective" test), although the two are not always clearly distinguished. Even where it appears that the defendant could have and would have obtained the drugs elsewhere, the fact that they were supplied by an agent or informer is, for policy reasons, sufficient to constitute a defense of entrapment.

The theoretical underpinnings of the entrapment defense are not merely of academic interest, but, as shown below, are critical to a determination of what evidence is sufficient to rebut that defense.

Entrapment is a question for the jury unless there is no evidence to support the defense, or unless uncontradicted testimony makes it clear that an otherwise innocent person has been induced to commit criminal acts. *Boccelli, supra.* A defendant who can prove that the drugs he sold to one agent were supplied by another agent has established entrapment as a matter of law and is entitled to acquittal. *Id.*

Entrapment as a matter of law is established where

(1) the defendant raises a substantial and reasonable defense of entrapment, and

(2) the state fails to rebut or contradict the defense.

*McKinney, supra; State v. Cox,* 110 Ariz. 603, 522 P.2d 29 (1974).

The majority opinion concedes, and I agree, that appellant raised a substantial and reasonable defense. The facts, as alleged by appellant, would constitute entrapment as a matter of law. *Boccelli, supra.* Therefore, *State v. Quinonez,* 119 Ariz. 208, 580 P.2d 346 (1978), in which it was held that the defendant's testimony did not even raise the defense, is not relevant to this appeal. I do not read *State v. Petralia,* 110 Ariz. 530, 521 P.2d 617 (1974), to hold that the defendant's testimony alone cannot raise a substantial and reasonable defense.

The only issue is whether the state's rebuttal evidence was sufficient to take the

entrapment defense to the jury. In my opinion, it was not.

On the one hand, entrapment as a matter of law is established when the state "does nothing" to rebut the defense, e.g., when the state admits that the informant supplied the contraband to the defendant, *Boccelli, supra,* or when the state refuses to identify the informant or produce him at trial, thereby leaving the defense unchallenged, *McKinney, supra.* *McKinney* cited *United States v. Bueno,* 447 F.2d 903 (5th Cir.1971), *cert. denied* 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973), to the effect that if the informant's testimony would tend to disprove the defendant's story, it is up to the government to produce the informant. *Bueno* was "effectively overruled" by *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). *See United States v. Rodriguez,* 585 F.2d 1234, 1240 (5th Cir.1978). Consequently, I do not read *McKinney* as establishing an inflexible rule that the informant must be produced in order to rebut the entrapment defense.

On the other hand, entrapment as a matter of law is not established, and the question is one for the jury, when the state presents substantial evidence to rebut the defense, e.g., when the informant testifies that he did not supply the contraband but merely arranged the sale, *Cox, supra; State v. Hernandez,* 96 Ariz. 28, 391 P.2d 586 (1964), or where the informant testifies that he obtained the contraband pursuant to the defendant's instructions, *State v. Million,* 120 Ariz. 10, 583 P.2d 897 (1978); *State v. Stanley,* 123 Ariz. 95, 597 P.2d 998 (App. 1979), or where the informant testifies that any contraband he supplied was not that involved in the offense charged, *Million, supra.*

This case fits neither of the above patterns. The state did not completely default on presenting rebuttal, or admit the accuracy of appellant's story, but neither did it contradict appellant's story with the testimony of the informant Nanez or any other participant in, or witness to, the offense. The only rebuttal evidence presented was the testimony of deputy Norgaard concerning statements made by appellant at the time of his arrest, which was some six months after the offense. According to Norgaard, appellant stated that his suppliers were two individuals other than Nanez. Norgaard's testimony concerning that conversation was as follows:

Q. You had a conversation with Willis Mack on June 10th?

A. That is correct.

Q. And in that conversation, did it relate to cocaine?

A. That is correct.

Q. Where did that conversation take place?

A. In my patrol vehicle or the patrol vehicle coming to Winslow—or—correction—at Holbrook, county jail, the conversation took place downstairs in the complex, the Navajo county jail.

Q. That conversation took place here in the jail?

A. That is correct, downstairs.

Q. Did he make any statements to you concerning the source of the cocaine?

A. That is correct, he did.

Q. And what statement did he make?

A. He told me downstairs in jail, the Navajo County jail complex, where his source of cocaine supplier is and who it is.

Q. Who did he tell you?

A. He gave me a Russel LaMaid (phonetic), Kevin Knotts (phonetic).

. . . .

Q. Did he state how much he received from these sources?

A. Yes.

Q. What did he say?

A. He had boughten $240 worth at the first initial buy.

Q. And did he say when that occurred?

A. No, he did not. He said prior to making the last sale.

Q. Did he say when that sale was?

A. Yes.

Q. When was that?

A. Two the name of the two subjects?

Q. Yes.

A. He sold it to a cousin of a friend by the name of Nanez.

Q. Now, this occurred___now, this arrest occurred on June the 10th?

A. That is correct.

Q. And did he make any reference as to how long ago it was that he had purchased that cocaine?

A. He stated he hadn't cocaine on his possession or for sale for quite sometime on about June the 10th, 1980.

. . . .

Q. Did Mr. Mack give you any other names that night?

A. Yes, he did. He gave me a name which is familiar to me, his name is Randy Hinkle (phonetic), Steven___

THE COURT: Refrain from your comments. Just answer the question.

THE WITNESS: Randy Hinkle, Steven Aguilar (phonetic) and the two names I previously stated.

On cross-examination, Norgaard testified that he had written down appellant's statements on a piece of paper which he kept in his files for his reference only. The written memorandum was not produced at trial. Norgaard also testified that in August 1980 he told the deputy county attorney prosecuting the case that he had some names of appellant's sources, but he did not divulge those names. Norgaard also testified that several weeks after the arrest he told Officer Brisenger that he had some names, but could not recall whether or not he had divulged the names. Appellant denied making the statements related by Norgaard.

If an entrapment defense is recognized in "supply" cases in order to deter police overreaching, then the defense can be rebutted only by showing that the drugs were in fact not supplied by an agent or informer. Since the defendant's "predisposition" is irrelevant, evidence of other drug offenses is inadmissible. Such evidence is prejudicial to the defendant and does nothing to curb improper law enforcement. *State v. Mullen,* 216 N.W.2d 375 (Iowa 1974); *State v. Klauer,* 226 N.W.2d 803 (Iowa 1975); *State v. Nelsen,* 89 S.D. 1, 228 N.W.2d 143 (1975).

If, on the other hand, an entrapment defense is recognized in "supply" cases only

because it indicates the defendant's lack of intent, then the defense can properly be rebutted with evidence of other drug involvement which shows such intent or "predisposition". The majority view is that such evidence is admissible to rebut the defense. Annotation, Admissibility of Evidence of Other Offenses in Rebuttal of Defense of Entrapment, 61 A.L.R.3d 293 (1975). Any logical incongruity between the "objective" component of the defense and rebuttal by showing the defendant's state of mind is apparently overlooked. *See, e.g., Cox, supra,* in which the defendant alleged the drugs were supplied by the informant. The Court stated that the defendant cannot object to the introduction of evidence of other transactions to show predisposition.

Even assuming the accuracy and admissibility of Norgaard's testimony concerning statements made by appellant, I cannot conclude that the testimony rebutted appellant's defense. If the testimony was offered to show that the cocaine in question was not supplied by Nanez, it failed to do so. The testimony was vague as to the date of the purchases from the two suppliers, and, as I read the transcript, did not specifically relate to the three packages of cocaine involved in the offense charged. If the testimony was offered to show predisposition, it likewise failed to do so. The testimony dealt with offenses for which no one had been arrested or charged. It dealt with a purchase by appellant, and not with sales. Norgaard alluded to other sales, but provided absolutely no facts. I find distinguishable cases such as *Stanley, supra,* and *United States v. Martinez,* 429 F.2d 971 (9th Cir. 1970), *cert. denied Rojas v. United States,* 401 U.S. 915, 91 S.Ct. 894, 27 L.Ed.2d 815 (1971), which hold that if the proof and counterproof on the issue of entrapment depend on credibility factors or inferences to be drawn from conflicting evidence, then the question is one of fact for the jury. In those cases, the credibility contest is between the defendant and the informer or government agent, each offering different versions of events they participated in or

witnessed. I would agree that such matters are for the jury. But when the rebuttal testimony consists only of hearsay statements by one not involved in the events, statements which, even if true, do not directly contradict the entrapment defense, then there is nothing for the jury to decide. The motion for acquittal should have been granted.

In CR–6541, appellant pled guilty to two counts of sale of marijuana, class 6 felonies, and was sentenced to consecutive aggravated terms of 1.9 years on each count, as stipulated in the plea agreement. At sentencing, the trial judge stated:

> THE COURT: Based upon the plea agreement and based upon the evidence, the court finds in aggravating circumstances based upon the previous conviction of the sale of cocaine the quantities involved, and the other matters set forth in the pre-sentence report, the court hereby sentences you . . . .

Since the record contains no presentence report in CR–6541, I must conclude that the conviction in CR–6537 was the *only* circumstance used to aggravate the sentences in CR–6541. Absent that circumstance, aggravated sentences should not have been imposed. I further note that the trial judge imposed consecutive sentences without stating the reasons why, as required by A.R.S. § 13–708.

For the foregoing reasons, I would reverse the conviction in CR–6537 and set aside the plea agreement in CR–6541 and remand the latter to the trial court.