791 P.2d 1048

**STATE of Arizona, Appellee,**

v.

**David M. SOULE aka David Michael Soule, Appellant.**

No. 1 CA–CR 88–644.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 7, 1989.

Review Granted in Part and Denied in Part June 5, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Presiding Judge.

David Michael Soule appeals his conviction for three counts of sale of a narcotic drug. A knowledge of the facts is necessary to an understanding of the issues he raises.

In August of 1986, an undercover Phoenix police detective was informed that the defendant was selling heroin. He telephoned the defendant and, a few minutes later, went to the defendant's home. He told the defendant that he used heroin but was not "strung out" on it, and he asked if he could buy some methadone. The defendant sold him a small bottle of methadone for $60 and told the detective he would have another bottle available in a few days.

Five days later the detective returned to the defendant's home and asked to buy more methadone. The defendant sold him another bottle of methadone and offered to sell him two revolvers. This offer was declined.

Two days later, on August 14, the detective purchased two more bottles of methadone from the defendant. The defendant told the detective that he would sell one bottle for $65 or two for $110. Still later, on August 22, the detective went to a methadone clinic in Phoenix hoping to find the defendant, who had previously told the detective that he was getting the methadone from the clinic. The detective saw the defendant at the clinic and bought another bottle of methadone from him. On this occasion, according to the detective, the defendant told him he had another bottle to sell and asked the detective to see if he could find anyone who wanted to buy it.

At trial, the detective testified that he had been told the defendant was selling heroin. On cross-examination, he testified

that an informer had introduced him to the defendant and that he, the detective, had initiated each contact.

The defendant did not testify but called a number of witnesses who related that the defendant had been trying to break his heroin and alcohol habits and was not using heroin in August of 1987. Another witness for the defense testified that persons enrolled in a methadone program could receive the drug at a clinic and take it home for self-administration.

The trial court instructed on the defense of entrapment. The jury acquitted the defendant on the first sale of methadone and found him guilty of the three subsequent sales.

The defendant says the trial court erred in:

1. failing to grant a mistrial when the detective testified that he had been told the defendant was selling heroin;

2. failing to grant a mistrial when the detective testified the defendant offered to sell him firearms;

3. compelling him to admit the elements of the crimes as a prerequisite to raising the entrapment defense; and

4. failing to grant a new trial because the prosecutor had a conflict of interest.

We consider each in turn.

### TESTIMONY ABOUT OTHER HEROIN SALES

The defendant first claims prejudicial error based on the following direct examination of the detective:

Q [BY THE PROSECUTOR] Why did you go there [to the defendant's house]?

A I went there to purchase some methadone from David Soule.

Q And did you go there to purchase heroin?

A I was told that he was selling heroin, but I didn't—

[DEFENSE COUNSEL]: Your Honor, I object.

THE COURT: Sustained. The jury will disregard the statement made about what somebody else may or may not

have said. That's not testimony you may consider.

The defendant, at the end of the state's case, moved for a mistrial stating that the detective's improper testimony regarding the heroin was prejudicial. The court agreed but stated it was not "so prejudicial" as to warrant a mistrial. The defendant argues that this testimony, although stricken, was especially damaging given the fact that his defense was entrapment. The "heroin" testimony, he says, impermissibly suggested that the defendant was predisposed to commit the crime and was not entrapped into selling drugs.

We would be far more sympathetic to the defendant's argument were we of the opinion that he was entitled to an entrapment instruction in the first place. We believe that he was not. Normally, whether a defendant has been entrapped is a question for the jury to decide, unless there is no evidence to support the defense or there is uncontradicted testimony which clearly indicates that an otherwise innocent person has been induced to commit the crime. *State v. Boccelli*, 105 Ariz. 495, 467 P.2d 740 (1970); *State v. Gessler*, 142 Ariz. 379, 382, 690 P.2d 98, 101 (App.1984), citing *State v. Petralia*, 110 Ariz. 530, 521 P.2d 617 (1974); *State v. Mack*, 134 Ariz. 89, 654 P.2d 23 (App.1982). Entrapment requires that the criminal conduct be the result of creative activity, i.e., originative activity, by law enforcement officers or that the state do more than merely provide an opportunity for a predisposed person to commit the crime. *State v. Stanley*, 123 Ariz. 95, 103, 597 P.2d 998, 1006 (App.1979). The fact that the police made the first contact, without placing the suspected seller under uncommon temptation or inducement, does not constitute entrapment. *United States v. Christopher*, 488 F.2d 849 (9th Cir.1973); *State v. Deschamps*, 105 Ariz. 530, 533, 468 P.2d 383, 386 (1970); *State v. Reyes*, 99 Ariz. 257, 262, 408 P.2d 400, 403 (1965).

We are unpersuaded by defense counsel's argument to the jury that the defendant's sympathy for the detective's supposed suffering somehow justified a

finding that the defendant was entrapped. That argument is unsupported by the evidence, but even if it were supported, such, without more, would not constitute a defense. Many purchasers of illegal drugs are addicts. Sympathy for that condition simply ought not and does not constitute a defense to a charge of selling illegal drugs. In one leading entrapment case in which an appeal to the drug seller's sympathy was given weight, the police agent had *repeatedly* importuned a *highly resistant* defendant to purchase drugs for him. *See Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). All that the facts show here is that the defendant was given the opportunity, on four separate occasions, to sell the drugs. There was no evidence of uncommon persuasion, temptation, or inducement, and there is no evidence that the defendant displayed the least bit of reluctance to sell the drugs. Where there is no evidence to support a defense of entrapment, an instruction on that defense is properly refused. *Reyes*, 99 Ariz. at 261–62, 408 P.2d at 403.

■ We have not lost sight of the fact that whether or not the defendant was *entitled* to an entrapment instruction, such was his defense—a defense allowed by the court. Even considering the improper evidence that the detective had heard the defendant was selling heroin in this context, we believe that the trial court's admonition to the jury to disregard the testimony was a sufficient cure. We do not believe that there is a reasonable probability that the defendant would have been acquitted on the three counts for which he was convicted even if the jury had never heard the improper testimony. *See State v. Grijalva*, 137 Ariz. 10, 14, 667 P.2d 1336, 1340 (App.1983). The evidence against the defendant was overwhelming. Following the initial purchase of methadone, the defendant advised the officer that he would have more in a few days, which resulted in the second transaction. On the third sale, the defendant offered the detective a discount to induce him to buy two bottles, although the detective had only asked to purchase one bottle. After the fourth sale, the defendant asked the detective if he knew of anyone else who might be interested in purchasing the drug. With this evidence, we do not believe it reasonably probable that the defendant would have been acquitted but for the reference to his prior sale of heroin. We will not speculate on why he was acquitted of the charges arising from the first sale.

■ The defendant argues that the prejudice resulting from the "heroin" testimony was compounded when the prosecutor, in her closing argument, said that the detective did what any conscientious officer would do if he heard that someone was selling narcotics. The defendant did not object at the time of trial or raise the issue in his motion for new trial. We will not now consider an issue which has been presented for the first time on appeal where there is no fundamental error. *Goodman v. Carson*, 84 Ariz. 177, 325 P.2d 819 (1958); *Torres v. North American Van Lines, Inc.*, 135 Ariz. 35, 658 P.2d 835 (App.1983); *Miller v. Palmer*, 143 Ariz. 84, 691 P.2d 1112 (App.1984). Assuming the prosecutor's argument was a calculated reference to evidence which was excluded, it was improper, but we do not believe it constitutes fundamental error. Even if it does, given the weight of the evidence against the defendant, it was harmless beyond a reasonable doubt.

## TESTIMONY CONCERNING THE OFFER TO SELL REVOLVERS

■ At another point during the detective's direct examination, he testified that the defendant had offered to sell him two revolvers. This testimony came as a surprise to both the prosecutor and the defense attorney. The trial court sustained defense counsel's objection and told the jury to disregard this testimony. Defense counsel also moved for a mistrial based on this testimony.

The defendant contends that the detective's "surprise" testimony concerning the revolvers precluded him from asking voir dire questions of the potential jurors about any bias they might have against weapons and people who sell them. There was no

suggestion that the defendant's offer to sell the revolvers was illegal, and we think the defendant's fear of bias is very attenuated. Speculation as to juror bias is insufficient to establish that the defendant was denied a fair trial. *See, e.g. State v. Mulligan,* 126 Ariz. 210, 613 P.2d 1266 (1980). For the reasons discussed in connection with the testimony about heroin, no reversible error arises from the jury having heard of the offer to sell revolvers.

## REQUIRING THE DEFENDANT TO ADMIT THE ELEMENTS OF THE OFFENSE

■ Under existing Arizona law, a defendant must admit all the elements of the offense in order to avail himself of the defense of entrapment. *State v. Nilsen,* 134 Ariz. 431, 657 P.2d 419 (1983). We will treat the argument as if the defendant were entitled to an entrapment instruction. Faced with this law, defense counsel read a statement to the jury which fully admitted all of the elements of the offenses. On appeal, the defendant urges us to reconsider Arizona law on entrapment in light of the recent United States Supreme Court opinion in *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). *Mathews,* which interprets federal law, permits a defendant to raise an inconsistent defense and plead entrapment without admitting all of the elements of the offense where there is sufficient evidence from which a jury could find entrapment. The result reached in *Mathews* is both well reasoned and fair.

We have recognized, in another context, that inconsistent defenses are permissible. In *State v. Wright,* 163 Ariz. 184, 186, 786 P.2d 1035, 1037 (App.1989), we held that where a defendant presents the "requisite modicum of evidence" as to defense of a third person, he is entitled to an instruction on that defense even though he has not admitted all the elements of the charged offense. *See also State v. Plew,* 150 Ariz. 75, 722 P.2d 243, 245 (1986) (defendant entitled to a self defense instruction even though he denied shooting the victim).

Recently, our supreme court held that a defendant's reliance on *Mathews* for the proposition that an inconsistent defense is proper, was misplaced because the defendant failed to produce sufficient evidence to justify the inconsistent defenses of self defense and defense of a third person. *State v. Dumaine,* 162 Ariz. 392, 783 P.2d 1184 (1989). Perhaps the supreme court, in resolving *Dumaine* on that ground, has tacitly approved of *Mathews* and would now overrule *Nilsen.* We are not free, however, to follow *Mathews* in the face of *Nilsen. See State v. Korte,* 115 Ariz. 517, 566 P.2d 318 (App.1977). The trial court did not err in requiring the defendant to admit all the elements of the offense in order to raise the entrapment defense.

## CONFLICT OF INTEREST

■ Prior to sentencing, the court, sitting without a jury, found that the defendant had previously been convicted of two crimes, one of which was second degree murder. These convictions were used to enhance defendant's sentence.

After the bench trial on the prior convictions, defense counsel discovered that Thomas E. Collins, the Maricopa County Attorney at that time, personally represented the defendant in a Rule 32 proceeding, more than ten years ago, on the prior homicide conviction.

In his motion for new trial, defense counsel contended that the Maricopa County Attorney's Office had a clear conflict of interest in prosecuting the defendant on the present charges and that a new trial was required, citing *State v. Latigue,* 108 Ariz. 521, 502 P.2d 1340 (1972). Defendant's request for a new trial was denied because there was no evidence that Mr. Collins either gave information to the deputy county attorney prosecuting the instant charges, or directly participated in the present prosecution.

In *Latigue,* the supreme court held that a special prosecutor must be appointed to prosecute a defendant where the chief deputy county attorney previously acted as co-counsel for the defendant. *Id.* Defendant's reliance on *Latigue* is misplaced.

Although the facts in *Latigue* are sketchy, it appears there the chief deputy county attorney had acted as co-counsel for the defendant in the very case in which the defendant raised the issue of conflict of interest and that the chief deputy county attorney had had access to all records and information pertaining to that very defense. In our case, there is no real suggestion that Collins had information from his representation of the defendant ten years earlier that related to the prosecution of this case. Proof of defendant's prior conviction for the second degree murder charge was obtained and established through public records.

We have reviewed the entire record for fundamental error and having found none, affirm the convictions and sentences imposed.

GRANT, C.J., and FIDEL, J., concur.